**H. F. COLLIER, d/b/a H. F. Collier Conoco Station, Appellant,**

v.

**B & B PARTS SALES, INC., Appellee.**

No. 556.

Court of Civil Appeals of Texas, Tyler.

Sept. 2, 1971.

Law Offices of James N. Phenix, Kyle Freeman, Henderson, for appellant.

Smead, Roberts, Harbour, Smith, Harris, French & Parker, Robert M. Parker, Longview, for appellee.

McKAY, Justice.

Appellee sued appellant for $1,027.94, plus attorney's fee, alleging that to be the balance due on a sale of stereo tapes, cartridges and stereo equipment sold by appellee to appellant on October 12, 1968. Trial was before a jury, but at the close of the evidence, the trial court granted appellee's motion for an instructed verdict and rendered judgment for appellee for the amount sued for plus the stipulated attorney's fee of $275.00. Appellant contends in his one point that the trial court erred because there was a genuine issue of a material fact which should have been submitted to the jury.

Appellee's salesman Donaho testified he called on appellant on or about October 1, 1968, to sell him some stereo tapes and equipment, and that on October 12, 1968, he returned and delivered to appellant stereo tapes, speakers and other equipment. Invoices for the items were also prepared and these invoices had printed thereon "Sold To," followed by appellant's name and address in handwriting. Also written by Donaho by hand was "Terms 30–60–90 this equipment will be picked up if not sold in 90 days." Donaho further testified that appellant asked him about a consignment arrangement but that he told appellant that appellee did not have any consignment arrangement. He further testified that when he and appellee's general manager, Bell, went to appellant's station after appellant had reported a burglary, that appellant asked that they bring more tapes and equipment for him to sell so that when he got enough money, he would pay appellee, and that appellant would not accept the offer Donaho and Bell made to him to pick up the small amount of equipment remaining so that appellant could be given credit for it.

It is undisputed that appellant's service station was burglarized about two weeks after the tapes, speakers and equipment were delivered to appellant and that most of the merchandise involved in this case was stolen. Appellant had made one payment of $18.86, and there was a credit memo of $51.25 for some item returned.

Appellant contends that Donaho agreed to a consignment arrangement, and the merchandise was delivered to him on consignment, and that when Donaho made the delivery, he, appellant, refused to sign the invoice because Donaho had put the 30–60–90 day terms on it, but that after Donaho wrote "this equipment will be picked up if not sold in 90 days," he signed it. Appellant testified that Donaho told him that the 30–60–90 day terms had to be on the invoice for appellee to borrow money on its accounts receivable and appellant further said Donaho told him before he signed the invoice that he would have to pay for the merchandise when he sold it and a replacement would be shipped to restock it and that appellee was to own the merchandise. The testimony of appellant further shows that he tendered the remaining items to appellee for full release of any indebtedness but that General Manager Bell would not agree to do so.

■ It is appellant's position that the fact issue for the jury raised by the evidence was whether there was a consignment. The oral testimony dealing with negotiations and circumstances of the transaction must give way to the written invoice under the rule of merger—that is, all prior negotiations are presumed to be merged into the writing and, in the absence of fraud, accident or mistake, cannot be shown to vary the terms of the written agreement. 13 T.J.2d, section 276, page 509. We must look to the written agreement and measure it by the court's instructed verdict.

■ An instructed verdict is warranted only when the evidence is such that no other verdict can be rendered, and the win-

ning party is entitled, as a matter of law, to a judgment. Stephenson v. O'Neal, 433 S.W.2d 804 (Tex.Civ.App., Houston 14th, 1968, writ ref., n. r. e.); Carsey v. Bolin, 427 S.W.2d 721 (Tex.Civ.App., Houston 14th, 1968, n. w. h.). We conclude the trial court properly granted the motion for instructed verdict and rendered judgment for appellee because under the Uniform Commercial Code, Article 2.326, Vernon's Ann.Tex.St.,[1] the transaction was a sale as a matter of law. The transaction here was a "sale or return," and under section (c) of Article 2.326 and section (b) (1) and (2) of Article 2.327[2] of the Uniform Commercial Code, it became a sale, and therefore title passed to the appellant. The notations "Terms 30–60–90" and "this equipment will be picked up if not sold in 90 days" do not constitute a consignment. We construe the language to mean that there was a sale of the items listed on the invoices, but the seller agreed to pick up items which had not been sold in 90 days.

In Anderson's Uniform Commercial Code, Vol. 1, Sec. 2–326:1, p. 258, it is stated: "* * * The type of 'sale or return' involved herein is a sale to a merchant whose unwillingness to buy is overcome only by the seller's engagement to take back the goods (or any commercial unit of goods) in lieu of payment if they fail to be resold. * * *" And in Sec. 2–326:4, p. 260, of the same work is found: "Unless otherwise agreed, a transaction under which goods delivered primarily for resale may be returned to the seller even though they conform to the contract is a 'sale or return.'"

In 50 T.J.2d, Sales, section 22, page 277, we find this statement:

"Under the Uniform Commercial Code, many transactions that might have been regarded as consignments under former law will be regarded as sales. This is because of a code provision stating that where goods are delivered to a person for sale and he maintains a place of business where he deals in goods of the kind involved, under a name other than that of the person making delivery, the goods are deemed to be on sale or

---

1. "(a) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(1) a 'sale on approval' if the goods are delivered primarily for use, and

(2) a 'sale or return' if the goods are delivered primarily for resale.

"(b) Except as provided in Subsection (c), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

"(c) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum'. However, this subsection is not applicable if the person making delivery

(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(3) complies with the filing provisions of the chapter on Secured Transactions (Chapter 9).

"(d) Any 'or return' term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this chapter (Section 2.201) and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (Section 2.202). (59th Legis., Ch. 721, Sec. 2–326.) Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, section 1."

2. "(b) Under a sale or return unless otherwise agreed

(1) the option to return extends to the whole or any commercial unit of the goods while in substantially their original condition, but must be exercised seasonably; and

(2) the return is at the buyer's risk and expense."

**154**

return, as regards claims of creditors of the person conducting the business. In other words, many transactions whereby a consignor sends goods to a dealer in goods of that kind will be regarded as sales transactions, and not consignments, under the code. * * * "

 The intention of the parties seems to be no longer determinative of the question of whether a transaction was a sale or a consignment under the Uniform Commercial Code. In addition, under Article 2.327(b) (2), supra, when a transaction is a sale or return agreement, the return is at the buyer's risk.

We conclude there was no question, of fact for the trial court to submit to the jury and the question of law was properly decided by the court.

The judgment is affirmed.