**EMPLOYERS CASUALTY COMPANY, Appellant,**

v.

**Fred L. PETERSON et ux., Appellees.**

**No. 20312.**

Court of Civil Appeals of Texas, Dallas.

Nov. 12, 1980.

Rehearing Denied Dec. 11, 1980.

582

Dave Townend and J. W. Payne, Dallas, for appellant.

Bertran T. Bader, III and Bert Bader, Bader & Cox, Dallas, for appellees.

Before GUITTARD, C. J., and ROBERTSON and HUMPHREYS, JJ.

HUMPHREYS, Justice.

Fred L. Peterson and Mona Rose Peterson sued Employers Casualty Company to recover under a homeowner's policy for the loss of a diamond ring and a pair of diamond earrings. After a jury trial, the court rendered a verdict for the plaintiffs for $19,400. Employers appeals, contending primarily that the court's equalization of jury strikes was improper, that the transaction involved in this case was a "sale or return" as a matter of law, and that the court erred in refusing to admit certain evidence and to submit certain requested special issues. We affirm.

Prior to October 1976, Fred Peterson bought jewelry from Nathan Shay, doing business at Professional Jewelers, Inc., and Shay sold some jewelry for Peterson's wife. Peterson testified that in October of 1976 he asked Shay to sell a diamond ring, diamond earrings and three other items of jewelry. Shay picked up the jewelry at Peterson's house and gave him a receipt dated October 12, 1976, listing the five items and stating beside each item a figure for "customers est. of value." The receipt lists the ring for $9,800 and the earrings for $850 and on the bottom of the receipt are the written words "To be sold at the agreed prices above." Below this notation appears Peterson's signature.

Peterson testified that on Friday, two days later, he called Shay and told him he had decided not to sell the ring at that price and instructed him to bring it and the other jewelry back. At first, he said, Shay told him he had already sold it, but then said he had been "conned" out of it. Shay also stated that he was showing some jewelry and a man stole it off his desk. Peterson further testified that he told Shay to bring him either the jewelry or the money, and Shay said he had disposed of the earrings and would bring the other jewelry. Shay brought him the other items and wrote out a check, but Peterson refused to accept it because Shay said he would not have money in the bank until the following Monday. After Peterson brought suit on a homeowner's policy against his insurer, Employers

Casualty Company, for the loss of the jewelry, Employers impleaded Shay as a third–party defendant for indemnity and contribution. Shay was called as a witness at the trial, but refused to testify, claiming his privilege against self incrimination. The court rendered judgment for plaintiffs after reducing the amount of damages found by the jury. The court also held that Employers was entitled to indemnity against Shay for the entire amount for which Employers was liable.

### Equalization of Jury Strikes

Employers first contends that the court erred in granting plaintiffs' motion for equalization of jury strikes. The court granted plaintiffs eight strikes, and Employers and Shay were each granted four strikes. Employers argues that since its position at trial was adverse to Shay's, the court erred when it deprived Employers of two of its six strikes allowed under Tex.R. Civ.P. 233.

■ Rule 233 allows a "party" six strikes, but "party" means litigant or group of litigants on the same side which do not have antagonistic interests. *Shell Chemical Co. v. Lamb*, 493 S.W.2d 742, 744 (Tex. 1973). Under Tex.Rev.Civ.Stat.Ann. art. 2151a (Vernon Supp.1980), the court must, after proper alignment of the parties, equalize the number of peremptory challenges provided by rule 233 "in accordance with the ends of justice so that no party is given an unequal advantage because of the number of peremptory challenges allowed that party." The only time the question of allocating strikes is involved is when any of the litigants on the same side are antagonistic on a question that will be submitted to the jury. *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 918 (Tex.1979). If no antagonism exists between litigants on the same side, each side must receive the same number of strikes. *Patterson Dental Co. v. Dunn*, 592 S.W.2d at 918; *see Tamburello v. Welch*, 392 S.W.2d 114, 116 (Tex.1965). Antagonism exists if these two parties have different positions concerning an issue. *Patterson Dental Co. v. Dunn*, 592 S.W.2d at 918.

■ We consider the information the trial court had before it at the time of the motion for equalization to determine if antagonism existed between Shay and Employers. Plaintiffs pleaded, in their original petition, that Shay had stolen the jewelry, but they asserted no cause of action against Shay. Employers answered that plaintiffs did not have ownership, custody, or control of the jewelry at the time. The only cause of action against Shay was Employers' claim for contribution and indemnity under "any legal theory" in the event it was found liable to plaintiffs. Employers pleaded that Shay took the jewelry pursuant to an agreement to sell it for the plaintiffs, that he later told plaintiffs the jewelry was sold, and that he offered to pay plaintiffs $10,600 for it, but that they refused to accept it. Although Shay pleaded a general denial, he further alleged basically the same facts. The defendants were therefore aligned in the view that Shay had not stolen the jewelry. We cannot ascertain any fact issue to be submitted to the jury on which Shay and Employers would have a contrary stand. If an issue had been submitted concerning Shay's theft of the jewelry, and the jury had answered that Shay had stolen the jewelry, on this record the court would rule as a matter of law on the question of contribution or indemnity. No other facts were pleaded which would bear on contribution and indemnity. *See Ogle v. Craig*, 456 S.W.2d 778, 781 (Tex.Civ.App.—Amarillo 1970), *rev'd on other grounds*, 464 S.W.2d 95 (Tex.1971). Consequently, the court did not abuse its discretion when it allowed both sides the same number of strikes. *See Lorusso v. Members Mutual Insurance Co.*, 603 S.W.2d 818 (1980).

### Exclusion of Evidence

In Employers' next points, it urges error in the exclusion of certain evidence. Employers offered the testimony of an investigating police officer and a representative of Employers concerning various conversations with Shay. Basically the testimony was that Shay had told each of them that he

had sold the jewelry for $10,600 and that Fred Peterson had refused to take $9,800 for the ring. Employers asserts that his testimony was admissible under the *res gestae*, admission of a party opponent, and declaration against interest exceptions to the hearsay rule. We disagree with this assertion as to all three exceptions.

The statements made by Shay to these two witnesses were not admissible as *res gestae* because the statements were not made in connection with an act pertinent to the issues. The statements must be part of the transaction at issue or arising therefrom and so soon thereafter as to raise a presumption that they are spontaneous. *Knapik v. Edison Brothers, Inc.*, 313 S.W.2d 335, 338 (Tex.Civ.App.—Waco 1958, writ ref'd). These statements were made after the transaction involved here when Shay had talked to third parties, the police and an insurance investigator. Employers relies on *Olvey v. Jones*, 137 Tex. 639, 156 S.W.2d 977, 982 (1941), for its assertion that the statements were admissible as *res gestae* to explain a business transaction. We disagree because these statements do not bear on the agreement entered into here, but only what occurred afterward.

Nor are these statements admissible as declarations against interest. A declaration against interest is admissible if a person is unavailable as a witness and it is against his pecuniary or proprietary interest at the time it is made. *Cooper v. Durham*, 565 S.W.2d 308, 311 (Tex.Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Phagan v. State*, 509 S.W.2d 703, 707 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n. r. e.), *cert. denied*, 421 U.S. 995, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975). These statements were not against Shay's pecuniary or proprietary interest at the time they were made. In fact, these assertions were self-serving because he stated that he was attempting to give the money to the plaintiffs, pursuant to their agreement. The amount he allegedly was paid for the jewelry and offered Peterson are the same amount that the parties agreed would be paid, according to Shay's appraisal form.

We also hold that the evidence is not admissible as an admission of a party. These statements were not inconsistent with Shay's position and were not offered against him, but were offered against plaintiffs' cause of action against Employers. They were not admissible for that purpose.

In another point of error Employers argues that the court erred in refusing to admit three paragraphs of Shay's answer as judicial admissions. The content of these paragraphs was that Shay had sold the jewelry and that Fred Peterson had refused the money. Again, however, Employers was not attempting to admit these provisions of the answer on any claim against Shay, but against plaintiffs. Shay's statements and the paragraphs of his pleadings were not admissible against plaintiffs.

In its last evidentiary point, Employers contends that the court erred in failing to admit evidence of a claim made by plaintiffs against another insurance company for a similar loss. It argues that this evidence was admissible to show a scheme or plan. We cannot agree because Employers did not plead fraud, a scheme or plan, or any facts which would render this evidence admissible. If the evidence of other transactions between plaintiff and a third party is not relevant to any issue pleaded in the case it is inadmissible. *Irwin v. Par–Oil Well Servicing Co.*, 349 S.W.2d 277, 278 (Tex.Civ.App.—Texarkana 1961, writ ref'd n. r. e.); *see Payne v. Hartford Fire Insurance Co.*, 409 S.W.2d 591, 595 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.). Employers also argues that this evidence was admissible because it bears on Peterson's credibility as a witness. The fact that Peterson made one prior similar claim does not bear on his truthfulness. Furthermore, it was inadmissible if it was an attempt to show claims–mindness of the plaintiffs. *See Martinez v. Williams*, 312 S.W.2d 742, 752 (Tex.Civ.App.—Houston 1958, no writ).

### *"Sale or Return"*

In several points Employers argues that the court erred in refusing to submit re-

quested special issues. It first argues that the jury should not have been asked the following question with the accompanying instruction:

> Do you find from a preponderance of the evidence that Fred L. Peterson entered into a "sale or return" agreement as to the diamond earrings and the man's diamond ring with Nathan Shay?

> You are instructed that where goods are delivered to an individual, corporation or any other business entity for sale and such individual, corporation, or other business entity maintains a place of business at which he or it deals in goods of a kind involved under a name other than the name of the person making the delivery, there is deemed to be a "sale or return."

Employers contends that under Tex.Bus. & Com. Code Ann. § 2.326 (Tex. UCC) (Vernon 1968 and Supp.1980), this transaction was a "sale or return" as a matter of law, or that the issue quoted above should have been submitted to the jury. Section 2.326 of the Texas UCC provides in relevant part:

> (a) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

> (1) a "sale on approval" if the goods are delivered primarily for use, and

> (2) a "sale or return" if the goods are delivered primarily for resale.

> . . . . .

> (c) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum" . . . .

> . . . . .

▪ Employers argues that there is at least a fact question as to whether the transaction was a "sale or return" under section 2.326(a) rather than a consignment whereby Shay became an agent to sell the property for the Petersons. We conclude that no fact issue exists concerning this matter. The evidence is undisputed that Shay was in the business of selling goods of the kind involved, jewelry, and that the jewelry was delivered to him. It is also clear from the appraisal form which was introduced into evidence, dated October 12, 1976, signed by Peterson and with Shay designated as the clerk, that this jewelry was not sold to Shay, but was delivered to be sold by Shay. The form includes the notation at the bottom, "To be sold at the agreed prices above." Although the notation does not specify that Shay could return the property if not sold within a reasonable time, Shay would be able to return the property whether the transaction was a "sale or return" or a consignment, with Shay acting as plaintiffs' agent. Consequently, the question of whether this transaction was a "sale or return" is a question of law, based on the undisputed evidence.

Employers argues further that the transaction was a "sale or return" as a matter of law, and therefore, that the jewelry was not "owned by or in the custody or control of the insured" at the time of the loss, which was required in order for the plaintiffs to recover under the policy. It argues that the plaintiffs did not own or have control of the jewelry because a "sale or return" occurred when they delivered the jewelry to Shay, and thus title was in Shay from then on.

To support its position, Employers relies on *Collier v. B & B Parts Sales, Inc.*, 471 S.W.2d 151, 152–54 (Tex.Civ.App.—Tyler 1971, no writ). In that case a supplier's salesman delivered stereo equipment to a dealer and invoices were prepared which had printed on them, "Sold to," followed by the dealer's name, and "Terms 30–60–90 this equipment will be picked up if not sold in 90 days." The court held that this was a "sale or return" under section 2.326(a) and

(c). *Collier* is not controlling here. The invoice in *Collier* revealed that a sale had taken place from the supplier to the dealer by the phrase "Sold to," followed by the dealer's name. The question was whether the fact that it could be returned made the transaction a consignment, with title retained in the supplier. Subsection (a) answered that question.

In a true consignment, title does not pass and consignor may reclaim goods at any time prior to their sale (subject to agreement otherwise). Likewise, in our case, the notation on the invoice, "To be sold at the above agreed prices," reveals that no sale had taken place from Peterson to Shay, but that Shay agreed to sell the jewelry for Peterson. Peterson testified that he gave the jewelry to Shay for Shay to sell for him. There is no contrary evidence. Thus, it is clear that no sale from Peterson to Shay was contemplated. The transaction was as "otherwise agreed" under subsection (a), and as between the parties was not a sale. Comment 1 under section 2.326 points out that the section "presupposes that a contract for sale is contemplated by the parties although that contract may be of the peculiar character here described." Here no contract for sale was contemplated by the parties, Shay was not a "buyer," and the jewelry was not for "resale."

Employer also contends that the transaction must be deemed a "sale or return" under subsection (c) because the evidence shows that Shay maintained a place of business at which he dealt in goods of a kind involved in the name of "Professional Jewelers." We cannot agree because, in our view, subsection (c) applies only with respect to creditors of the person conducting the business, not as between the original parties or their insurers. *See Security Ins. Co. v. Alliance Mutual Ins. Companies*, 408 F.2d 878, 881 (10th Cir. 1969). In this respect we disagree with certain statements in *Collier*, although we agree with the *Collier* result because the facts there established a "sale or return" within subsection (a). The language of subsection (c) makes clear that the intent of the parties concerning passage of title is to be disregarded only with respect to the rights of creditors, thus changing the rule followed in such cases as *Fowler v. Pennsylvania Tire Co.*, 326 F.2d 526, 531 (5th Cir. 1964), and *Charles M. Stieff, Inc. v. City of San Antonio*, 130 Tex. 594, 111 S.W.2d 1086, 1095 (1938), that even as with respect to creditors the intent of the original parties controls. *See* 24 Baylor L.Rev. 288, 293–94 (1972).

This interpretation of subsection (c) is supported by *Bufkor Inc. v. Star Jewelry Co., Inc.*, 552 S.W.2d 522, 524 (Tex.Civ.App. —Beaumont 1977, writ ref'd n. r. e.), a suit between a creditor and the person who had delivered the goods to his debtor. The court stated that the purpose of section 2.326 was to permit persons to deal with a debtor upon the assumption that the goods in his possession are unencumbered, unless the public records reveal the encumbrance. Thus, we conclude that subsection (c) does not apply to suits between the parties to the transaction.

### Other Special Issues

In addition to the requested issues submitting Employers' theory of a "sale or return," Employers requested special issues inquiring whether the ring and earrings "were not under the custody or control of Fred L. Peterson and members of his family of the same household at the time of the alleged loss," whether they were in the possession of Shay at the time of the alleged loss, and whether title had passed at the time the Petersons alleged a theft occurred. The court refused the issues concerning Shay's possession and passage of title, and modified the issue concerning control by submitting special issue number three, as follows:

> Do you find from a preponderance of the evidence that under the agreement between Fred L. Peterson and Nathan Shay, at the time of Fred L. Peterson's demand for the return of the diamond ring and diamond earrings, such items of jewelry were not under the control of Fred L. Peterson?

Answer, "They were not under the control" or "They were under the control". ANSWER: "They were under the control".

The court also gave the following instructions: "'Control' as that term is used in this charge means to have the right to exercise a directing or governing influence."

Employers objected to the definition of "control" as being at variance with the language of the policy and as expanding the meaning of the policy, in that the policy includes the word "control" in conjunction with other specific language, namely, "property which is owned by or in the custody or control of the insured and members of the insured's family of the same household." Employers objected further that the court's definition would extend "control" to some nebulous right of Peterson to have some exercising influence or a directing or governing influence over the ring. Employers further objected that by the terms of the receipt, title to the items listed had already passed to Shay and that the issue of "control" should not be elaborated on, defined, or enlarged upon. These objections were overruled.

On this appeal, Employers contends that the trial court should have submitted an issue in the language of the policy, as requested, and that no instruction or definition should have been given, as this was an attempt to enlarge or define the terms of the policy. Employers further complains that the issue of "control" was not controlling because the ultimate issues were those requested by Employers.

 Although we are not sure that the issue and definitions are correct, we conclude that no reversible error is shown. The issue of "control" is immaterial under this record. So long as the Petersons owned the insured property, it was covered by the policy, whether or not it was under the control and regardless of whether it was in another person's possession, because the endorsement covers scheduled property "owned by or in the custody or control of the Insured and members of the Insured's

family of the same household." The alternative language, "or in the custody or control of the Insured and members of the Insured's family of the same household," is relevant only in the event the insured had custody or control, but not ownership, at the time of the loss. Since there was no evidence of any control of the property by Peterson or members of his family apart from their right of ownership, no issue of "control" was required to establish coverage. Consequently, no reversible error is shown by the trial court's overruling of Employers' objections to the "control" issue or in overruling Employers' request to submit a "custody and control" issue in the language of the policy.

 Neither is reversible error shown in the trial court's refusal to submit Employers' requested issue concerning passing of title. The record shows that Employers did not contest the Petersons' ownership of the jewelry except insofar as it asserted that title had passed to Shay because of a "sale or return." There was no competent evidence that title had passed to a third person as a result of a sale by Shay, and Employers makes no contention here that title had passed to such a person. In support of its assertion that title had passed, Employers relies only on its theory of "sale or return," which we conclude is not well founded because the receipt evidencing the parties' agreement shows that the sale contemplated was not a sale to Shay, but a sale by Shay on the Petersons' behalf. The trial court could properly have considered the requested issue on passing of title as another attempt to submit the issue of passing of title to Shay by the terms of the agreement embodied in the receipt. Consequently, it was properly refused for the same reasons we have stated in connection with the requested issue on "sale or return."

 In this connection we note that the court and all parties, including Employers, tried the case on the theory that Employers had the burden to establish that the property was not owned or controlled by the Petersons at the time Peterson demanded re-

turn of the jewelry and Shay failed to return it, and Employers does not assert the contrary on this appeal. Since we hold that no issue was raised concerning the "sale or return" and no competent evidence of passing of title out of the Petersons was presented, their ownership of the property must be taken as established. Consequently, no fact issue was raised concerning coverage of the property at the time of the alleged loss.

### Other Points

■ Employers complains that error occurred in the voir dire of a juror in the presence of the jury panel. When this juror was asked if he could be fair and impartial in this type of case, he stated, "No, not to this defendant." When then asked if he had had experience with the defendant insurance company and based on that experience, could not be fair with them, he answered "Yes." We cannot agree that this was reversible error without any further statements. The juror did not reveal any facts which were likely to prejudice other members of the jury panel to the extent that it was likely to and probably did cause an improper judgment. Tex.R.Civ.P. 434. Moreover, counsel for Employers could have asked to take the juror out of hearing of the panel after his initial answer if he feared prejudice resulting from any further statements.

■ Next, Employers contends that the plaintiffs violated the court's order on a motion in limine when Peterson testified that he threatened to turn Shay in to the police. The order granting the motion in limine excluded any reference to the fact that Shay had been found guilty in a criminal proceeding concerning this matter, the fact that a complaint was filed concerning the facts of the suit, and the fact that there had been a trial. Peterson's testimony came in response to questions about what was said between Shay and him at the time he wanted his jewelry back. Peterson's statements did not violate the order granting the motion in limine. There were no statements that Peterson had called the police, or that the police had investigated the matter, much less that Shay was tried for theft in this matter.

■ In another point Employers argues that it was error for the trial court to allow the Petersons to amend their petition at the conclusion of trial to allege a loss under the policy rather than theft by Shay. Employers alleged in its answer on which it went to trial that the terms of the policy had not been complied with in that the jewelry was not in control of the plaintiffs and that they had no interest in it. Clearly, Employers' defense in this suit was that there was no loss under the policy because the Petersons did not own, or have custody of, or control of the jewelry in question at the time of the loss. Because its defense was not based solely on the plaintiffs' contention that Shay had stolen the jewelry, it cannot now contend that it was surprised by the trial amendment.

■ Employers also argues that the jury argument on behalf of the plaintiffs was prejudicial because they made reference to the fact that Shay had taken the fifth amendment and invited the jury to draw its own inferences from this fact. Employers contends that the rule in criminal cases that counsel cannot refer to the failure of a defendant to testify should also apply to civil cases. In this case, however, Employers must show that it was prejudiced by the plaintiffs' reference to Shay's failure to testify. In this contention, Employers contends that the jury was allowed to infer that Shay had in fact stolen the jewelry, and to find for the Petersons. The jury, however, could also have inferred this merely from the fact that Shay invoked the fifth amendment on the stand. We cannot agree that the rule concerning comments on failure of a defendant to testify is the same in a civil and a criminal case. The fifth amendment protects an individual from being forced to testify against himself if it might incriminate him. Inferences may not be drawn to establish his guilt. In this case, however, Shay's guilt was not being adjudicated. Furthermore, even if counsel's comment was improper here, the court cured any error by cautioning the jury not to consider counsel's statement. *Younger*

*Brothers, Inc. v. Myers*, 159 Tex. 585, 324 S.W.2d 546, 550 (1959); *Maddox v. State*, 373 S.W.2d 322, 325 (Tex.Civ.App.—Amarillo 1963, writ ref'd n. r. e.).

Employers also complains that there was jury misconduct which required a mistrial. Two jurors testified at a hearing on Employers' motion for new trial that one juror had related during deliberations that he had sold jewelry on consignment, that he often received less than it was worth, and that he felt that he had control over the jewelry. We cannot agree that this statement was prejudicial to Employers. Its primary contention in this case is that as a matter of law, the plaintiffs did not own, have custody of, or have control of the jewelry on which they claimed a loss. Furthermore, Employers does not argue that the evidence is insufficient to support the jury's answer that the plaintiffs had control of the jewelry at the time of the loss. If Employers does not attack the sufficiency of the evidence on this issue, this juror's statement could not have prejudiced Employers in this case. If the statement could have had some bearing on the amount of damages awarded by the jury, such error was corrected by the judge when she reduced the amount of damages awarded.

Employers' last point argues that the award to the Petersons of prejudgment interest of nine percent was error because the legal rate of interest is six percent per year. We agree that this was error, but we hold that Employers waived such error when it did not present this complaint to the trial court. *McLemore v. Johnson*, 585 S.W.2d 347, 349 (Tex.Civ.App.—Dallas 1979, no writ). Employers relies on *Howell v. Coca–Cola Bottling Co. of Lubbock, Inc.*, 599 S.W.2d 801 (Tex.1980) (per curiam), which disapproves the lower court's holding that a motion for new trial should have been filed in a non–jury case to preserve the complaint that the court had denied the plaintiff the right to amend the petition after a special exception was sustained. The court stated that the court of civil appeals' opinion, *Howell v. Coca–Cola Bottling Co. of Lubbock, Inc.*, 595 S.W.2d 208 (Tex.Civ.App.—Amarillo 1980), *writ ref'd n. r. e. per curiam*, 599 S.W.2d 801 (Tex.1980),

23 Tex.Sup.Ct.J. 374 would be construed to mean that all judgments would have to be attacked by a motion for new trial because that would be the first time a judge would have the opportunity to rule on the validity of the judgment itself. The lower court had held that a motion for new trial was required to preserve error where the record did not reveal that the appellant had been denied his right to amend his pleadings. The supreme court disapproved the lower court's holding because it required a motion for new trial even in a non–jury case. In our case, however, Employers could have presented some type of objection to the trial judge to allow him to correct his error, and the record does not reflect that it did so.

We briefly mention the plaintiffs' cross–points. First they contend that all of Employers' points of error are without merit because the plaintiffs were otherwise entitled to judgment as a matter of law. In their brief, however, they concede that there is a fact issue at least on the value of the earrings. They also contend that this appeal is frivolous and request a ten per-. cent penalty pursuant to Tex.R.Civ.P. 438. As this appeal involves several complex issues, we do not find it frivolous and thus decline to assess the penalty.

Affirmed.