Robert H. WIELER and Leslie L. Wieler, Appellants,

v.

UNITED SAVINGS ASSOCIATION OF TEXAS, FSB and D. Paul Webb, Appellees.

No. 06–94–00054–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 17, 1994.

Decided Sept. 20, 1994.

Rehearing Overruled Oct. 18, 1994.

David A. Lubin, Quastl & Glenn, LLP, Dallas, for appellants.

Foster Reese, III, Chapman & Reese, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Robert H. Wieler and Leslie L. Wieler appeal from an adverse summary judgment in their suit against United Savings Association for breach of contract, wrongful foreclosure, intentional infliction of emotional distress, and violation of the Deceptive Trade Practices Act. We agree with the Wielers that genuine issues of material fact were raised by the summary judgment proof on their causes of action for breach of contract, wrongful foreclosure, and deceptive trade practices, and for that reason summary judgment on those claims was improper.

The Wielers purchased a house and financed it through United Savings' predecessor. They signed a note providing for monthly payments of $518.49 and a deed of trust providing that, among other things, they would pay one-twelfth of the estimated annual tax assessments and insurance costs into an escrow account. The deed of trust also obligated the Wielers to increase the escrow payments if the escrow amount became insufficient to pay the charges against the property.

After purchasing the house, the Wielers sought protection in the bankruptcy court. Eventually, the bankruptcy court issued an order providing that the Wielers pay monthly payments of $676.00 on the mortgage until June of 1987, and then resume the payments required by the note and the deed of trust. The bankruptcy court's order also provided that the Wielers pay the mortgage company $6,097.28 in arrearages and $500.00 in attorney's fees.

Assuming that the bankruptcy court's order permanently modified their payment obligations, the Wielers continued to pay $676.00 per month for the note payment and the escrow deposits. United Savings, through its servicing agent, repeatedly demanded ever-increasing payments based on its construction of the note and because of an alleged deficiency in the escrow account. The Wielers ultimately discovered that the deficiency that was causing United Savings to demand ever-increasing monthly payments had been caused by United Savings' improp-

erly deducting $2,362.33 from the escrow account for attorney's fees. The Wielers contended that the improper deduction of the attorney's fees constituted a breach of the loan agreement, and they refused to pay the sums repeatedly demanded by United Savings. United Savings, after giving the Wielers several contradictory figures for the total amount owed, ultimately foreclosed on the house.

The trial court granted summary judgment in favor of United Savings on all of the Wielers' claims. We find that summary judgment was proper on the claim of intentional infliction of emotional distress, but it was improper on the claims of breach of contract, wrongful foreclosure, and deceptive trade practices.

To be entitled to summary judgment, a defendant must establish by competent summary judgment evidence that no genuine issue of material fact exists as to one or more of the essential elements of the plaintiff's cause of action and that the defendant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true, every reasonable inference is indulged in his favor, and any doubt is resolved in his favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

An appeals court may consider only the evidence before the trial court at the time of the hearing on the motion for summary judgment. *Hush Puppy of Longview, Inc. v. Cargill Interests, Ltd.,* 843 S.W.2d 120, 122 (Tex.App.—Texarkana 1992, no writ). Based on this evidence, the reviewing court must render the judgment that should have been granted by the trial court. *See Members Mutual Ins. Co. v. Hermann Hospital,* 664 S.W.2d 325, 328 (Tex.1984). Only issues expressly presented to the trial court by written motion, answer, or other response may be considered on appeal. TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex. 1979).

When, as in this case, the trial court's order does not specify the grounds relied on in granting summary judgment, the judgment will be affirmed if any of the theories advanced in the motion for summary judgment is meritorious. *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

In support of its motion for summary judgment on the breach of the loan documents and wrongful foreclosure claims, United Savings simply argued that the Wielers defaulted on their obligations under the note and deed of trust and that it followed all the procedures for foreclosure required by law and provided in the loan documents. It also contended that, because the Wielers themselves breached the loan documents by defaulting, they are estopped from claiming a breach of contract.

The Wielers contend that summary judgment on their claims for wrongful foreclosure and breach of the loan agreement was improper because (1) the bankruptcy court's order set their payments at $676.00, which they tendered as ordered; (2) shortages in the escrow account were due to United Savings collecting more for attorney's fees than allowed by the court; and (3) even if $676.00 was not the proper monthly payment, United Savings did not provide them notice of the proper payments, and instead gave conflicting notices of different amounts due, therefore depriving them of their right to cure any default.

■ The bankruptcy court's order provides that all future payments "shall be made according to the terms and conditions of the note." Thus, the Wielers' contention that the order required them to pay $676.00 per month without regard to provisions of the note or deed of trust is without merit. The Wielers also contend, however, that the shortage in the escrow account was caused by the unauthorized deduction of attorney's fees from the account. In his affidavit in support of their response to United Savings'

motion for summary judgment, Robert Wieler states that his first knowledge of a problem with the payments after the bankruptcy court's order was when he was contacted by Phyllis Lorens, who identified herself as an escrow research specialist for Commonwealth Mortgage Company, the servicing agent for United Savings, and that Ms. Lorens advised him that $2,352.33 had been deducted from the escrow account to pay attorney's fees. Wieler states that he did not authorize such payment, that the escrow account had been brought current when the Wielers paid the amount required by the court's order, and that the Wielers also paid all the attorney's fees allowed by the court. Wieler further states that he sent a letter to Lorens dated July 5, 1988, in which he advised her that her calculations were incorrect.

Wieler argues that the $2,362.33 deducted for attorney's fees was not authorized by the court's order, the note, or the deed of trust, and that the deduction amounted to a breach of the loan agreements. In neither its summary judgment evidence nor its argument on appeal do we find a response from United Savings to this claim by Wieler, other than statements that there was an outstanding escrow balance for taxes and insurance. This in itself raises a fact issue as to Wieler's claim. The note, deed of trust, and the court's order do not authorize a deduction for attorney's fees from the escrow account. If Wieler's claim is true, it raises a fact issue regarding breach of the loan agreements. Summary judgment was therefore improper on the claim for breach of the loan documents.[1]

■ As to wrongful foreclosure, a person who suffers loss or material injury because of irregularities in a foreclosure sale is entitled to maintain a suit for wrongful foreclosure. *See Gainesville Oil & Gas v. Farm Credit Bank*, 847 S.W.2d 655, 659 (Tex. App.—Texarkana 1993, no writ). A fact dispute as to the source of the escrow shortage that ultimately led to foreclosure also raises

---

1. Appellees maintain that because the Wielers were themselves in breach of the loan documents they cannot maintain a suit for its breach, citing *Dobbins v. Redden*, 785 S.W.2d 377 (Tex.1990), and *Dewberry v. McBride*, 634 S.W.2d 53 (Tex. App.—Beaumont 1982, no writ). However, because a fact issue exists as to the source of the escrow shortage, a fact issue also exists as to whether the Wielers' continued payments of $676.00 per month constituted a breach of the agreement.

questions concerning the regularity of the foreclosure. Thus, summary judgment was also improper on the claim for wrongful foreclosure.[2]

■ The Wielers also complain that the trial court erred in granting summary judgment against them on their claim for intentional infliction of emotional distress.

■ To establish the tort of intentional infliction of emotional distress the plaintiff must show that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, and (3) the defendant's actions caused the plaintiff severe emotional distress. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)). Liability for this tort may be imposed only where the conduct is so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized community. *Id.*

■ Clearly, a foreclosure sale that complies with the terms of the loan agreements and the applicable law would not justify a claim for intentional infliction of emotional distress. Even if the creditor's conduct is extreme or outrageous, he does not commit the tort if he does no more than insist on his legal rights in a permissible way. *See Motsenbocker v. Potts*, 863 S.W.2d 126, 132 (Tex.App.—Dallas 1993, no writ); RESTATEMENT (SECOND) OF TORTS § 46, cmt. g (1965).

The conduct of United Savings consisted mainly of the normal proceedings of a foreclosure. Return of checks because they were inadequate, notice that no more short payments would be accepted, demand for payment of deficiencies, and the other acts are the usual and reasonable acts preceding fore-

closure. The only improper conduct was the deduction of attorney's fees from the escrow account and the differing amounts of payment that United Savings demanded. There is no summary judgment proof that the attorney's fee deduction was done recklessly or with the intent to cause emotional distress. *See LaCoure v. LaCoure*, 820 S.W.2d 228, 233 (Tex.App.—El Paso 1991, writ denied). Additionally, although that improper act may have been a breach of the loan agreements and precipitated a wrongful foreclosure, it hardly constitutes conduct that is beyond the bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized community. *Twyman v. Twyman*, 855 S.W.2d at 621.

■ The summary judgment evidence also fails to show that the alleged grief, embarrassment, anger, and worry the Wielers experienced because of the foreclosure rose to the level of distress contemplated by the law. *See Schauer v. Memorial Care Systems*, 856 S.W.2d 437, 451 (Tex.App.—Houston [1st Dist.] 1993, no writ) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. j (1965)). Both Wielers admitted they sought no treatment for stress, although Leslie Wieler stated that she developed a rash due to stress and saw a physician concerning the rash. There was no summary judgment evidence that the embarrassment and anger the Wielers experienced was so severe that they could not be expected to endure it. *Schauer v. Memorial Care Systems*, 856 S.W.2d at 451. The trial court correctly rendered summary judgment against the Wielers on their claim of intentional infliction of emotional distress. *See Twyman v. Twyman*, 855 S.W.2d at 621.

■ Finally, the Wielers assert that summary judgment against them on their claim for violation of the Deceptive Trade Practices

2. United Savings argues that the Wielers are suing for attempted wrongful foreclosure, a cause of action not recognized in Texas. *See Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex.Civ.App.—Beaumont 1977, no writ). United Savings notes that it twice posted notices for substitute trustees sale (notice posted on February 12, 1990 for foreclosure sale on March 6, 1990, and notice posted on August 13,

1990 for foreclosure sale on September 4, 1990), and cancelled the sales. Therefore, it argues, there is no cause of action for wrongful foreclosure in connection with those postings. The Wielers' suit, however, appears based on the foreclosure that ultimately took place and does not appear to be a suit for attempted wrongful foreclosure.

**160**

Act was unauthorized. We agree. The DTPA provides, in pertinent part:

> (a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:
>
> .    .    .    .    .
>
> (3) any unconscionable action or course of action by any person....

Tex.Bus. & Com.Code Ann. § 17.50(a)(3) (Vernon 1987).

■■■■ A lawful foreclosure in compliance with the law and the loan contract does not violate the Deceptive Trade Practices Act. *See Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 333 (Tex.1983). The Wielers, however, argue that the unlawful deduction of attorney's fees from the escrow account and the series of conflicting demands for payment are evidence of an unconscionable course of conduct within the meaning of the DTPA. Deceptive and unconscionable acts in connection with a foreclosure can support a recovery under the DTPA. *See Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705 (Tex.1983).

> "Unconscionable action or course of action" means an act or practice which, to a person's detriment:
>
> (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or
>
> (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Tex.Bus. & Com.Code Ann. § 17.45(5) (Vernon 1987).

■■■ Following the Legislature's mandate to liberally construe the Act, *see* Tex.Bus. & Com.Code Ann. § 17.44 (Vernon 1987), we conclude that the Wielers' summary judgment evidence at least raises a fact issue whether United Savings tried to take advantage of the Wielers' lack of knowledge, ability, and experience to a grossly unfair degree. *See Farmers & Merchants State Bank v. Ferguson,* 605 S.W.2d 320 (Tex.Civ.App.—Forth Worth 1980), *aff'd as reformed,* 617 S.W.2d 918 (Tex.1981), where the court upheld a jury finding that a bank's wrongfully

dishonoring certain checks resulting in the bank's freezing the customer's account constituted an unconscionable course of conduct under the DTPA. Indeed, the situation here could be considered even worse, as it eventually led to the foreclosure of the Wielers' home. We note also that one need not prove that conduct was with intent, knowledge, or conscious indifference to support a finding of unconscionability. *City of Austin v. Houston Lighting & Power Co.,* 844 S.W.2d 773 (Tex. App.—Dallas 1992, writ denied).

For the reasons stated, we affirm the summary judgment as to the claim of intentional infliction of emotional distress. As to the other causes of action, we reverse the judgment and remand the causes for trial.