Ali H. NAYEF, Appellant,

v.

ARABIAN AMERICAN OIL COMPANY and Aramco Services, Inc., Appellees.

No. 13–93–00422–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 23, 1995.

Nada M. Makdissi, Houston, for appellant.

Robert E. Meadows, Harvey G. Brown, Jr., Sewell & Riggs, Houston, for appellees.

Before FEDERICO G. HINOJOSA, Jr., CHAVEZ and BASS[1], JJ.

## OPINION

CHAVEZ, Justice.

In two "issues," which we take as appellant's points of error, appellant complains that the trial court forced him to elect between pursuing a worker's compensation claim and a claim for intentional infliction of emotional distress that he jointly filed, and that the trial court erred in directing a verdict for the defendant at the conclusion of the trial. We find no error and affirm the judgment of the trial court.

Appellant was hired by appellees for work in Saudia Arabia on September 11, 1979 as an Engineer III. As part of his employment agreement, appellant was made aware that he was not covered by the Texas Worker's Compensation Act but by a form of voluntary worker's compensation insurance which would afford him the same protection and benefits that he would have had had he been covered by the Texas act. Appellant worked in various capacities for his employer for a period of nearly ten years when he informed his employer that he intended to resign for family reasons. He asked his supervisor to circulate his resume among Aramco's related companies in the United States, but he was unable to find employment with any of them.

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann § 74.003 (Vernon 1988).

Appellant went on vacation and later returned to find that he was being transferred because of his anticipated retirement and because of excess manpower. His transfer did not require a change in his title or salary, but appellant considered the transfers a demotion and demeaning to his status as a planning engineer.

On one of his moves, appellant suffered a back injury requiring him to seek medical attention. Eventually, one of the treating physicians restricted his driving activities. Appellant complained that his back condition suffered in the bus ride from his post in Abqaiq to the better medical facilities in Dhahran, a distance of some fifty miles. Appellant contends he was given demeaning assignments but that he always discharged them. His last reassignment changed his duties from those of a staff planning engineer to those of a general engineer which required him to do on site engineering work and desert driving. Appellant refused to do any desert driving because he felt that driving on uneven surfaces would affect his back condition. Appellant had a discussion of his medical condition with his supervisor, who did not accept his explanation. The supervisor felt he was refusing to follow orders and issued him a first warning. A third warning would have required his termination.

Appellant, however, filed a grievance with the company and began the process of pleading his grievance through the various layers of the grievance system. Disillusioned because he lost at the first two levels of the system, he by-passed the third level and went to the fourth and final level. Appellant claims he suffered severe depression and anxiety during all of this time. Believing the grievance procedures were futile, appellant claims he was forced into submitting his resignation, and he returned to the United States before his grievance at the fourth level was finalized. After returning to the United States, he filed this suit.

Appellant's counsel claims that before jury voir dire began, the trial judge forced her to elect which cause of action she was to try, the suit for damages alleging intentional infliction of emotional distress or the claim for worker's compensation benefits. Appellant concedes that this conversation or event occurred outside the record. Appellees claim that the conversation never took place and that, without a record, appellant has preserved nothing for appeal.

It is well settled that the Texas Worker's Compensation Act bars an employee from bringing a common law negligence action against the employer, but not for intentional torts. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex.1983); *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex. 1980). But, if the employee collects benefits under the Act and also alleges the injury was as a result of an intentional tort, the employee is barred from recovering damages outside the Act. *Porter v. Downing*, 578 S.W.2d 460, 461 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). In some instances, an employee may have a worker's compensation claim against the employer and also a common law claim for an intentional tort. In order to maintain the two separate causes of action, however, the employer's intentional act must be separable from the compensation claim and produce an independent injury. *Massey*, 652 S.W.2d at 933.

Before trial, appellees filed a motion for partial summary judgment in which all the relief it sought was to limit appellant's damages to those which would be recoverable under the Texas Worker's Compensation Act. The motion was simply denied without written opinion. The record before us does not show that a motion for severance was filed or ruled on, nor does it show what occurred during or following voir dire concerning appellant's claim that the trial court forced her to elect the cause of action she was proceeding on. The record does show that the worker's compensation claim was separable from the claim for intentional infliction of emotional distress because the intentional tort was not the cause of the on-the-job injury. At the conclusion of plaintiff's case and before preparation of the charge, the court inquired of appellant's counsel as to which cause of action she was proceeding on. After some discussion, appellant stated she was proceeding on the intentional tort. After directing a verdict in favor of the defendant, appellant, in response to a

question, again told the court that there was no other cause of action surviving. The record, therefore, is silent as to the claimed error of being wrongly forced to make an election, and there being nothing preserved for this court to review, we must affirm the trial court. TEX.R.APP.P. 50(d). Accordingly, we overrule appellant's point of error one.

In her second point of error, appellant claims that the trial court erred in directing a verdict in favor of appellees on the intentional infliction of emotional distress claim. Texas first adopted the tort of intentional infliction of emotional distress in 1993. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). In doing so, the supreme court adopted the elements of Section 46(1) of the RESTATEMENT (SECOND) OF TORTS. *Id.* at 622. Those elements are: 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe. RESTATEMENT (SECOND) OF TORTS § 46(1) (1965).

Recently, the supreme court held that an employer's questioning of an employee concerning the taking of a wreath from the store without paying for it was not, as a matter of law, extreme and outrageous conduct. *Randall's Food Mkts, Inc. v. Johnson,* 891 S.W.2d 640, 644 (1995). In *Randall's,* the employer's agents asked a management level employee to explain her wrongdoing. The court there said that the employer acted within its legal rights to investigate reasonably credible allegations of wrongdoing. That conduct, the court found, was not "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community," but rather a managerial function necessary to the ordinary operation of a business organization. *Id.* at 644 (citing *Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993)).

Here, Aramco disputed appellant's claimed inability to do desert driving and refused to provide him with transportation to and from work or to the medical facility, citing company policy and the unavailability of vehicles. There was a question as to the duration of his driving restrictions. But for all of appellant's grievances, he was afforded hearings through the various levels set up by the company. While the company did not provide him with an independent medical examination to determine whether or not his disability prevented him from driving, it did provide him with medical care and paid his salary during his off time. Appellant also claims that his transfer to a demeaning position and different location, without reduction in salary or benefits, constitutes a part of the company's outrageous conduct towards him. Because he did not succeed at the first two levels of the grievance ladder and felt he would probably not succeed at the fourth and final level, appellant chose to resign rather than run the risk of receiving additional warnings leading to his termination.

The facts of this case do not meet the "outrageous conduct" test set out in *Twyman* or *Randall's.* Accordingly, we overrule appellant's second point of error.

We affirm the judgment of the trial court.