Rueben C. JOHNSON, Appellant,

v.

STANDARD FRUIT AND VEGETABLE
CO., INC., Bright Truck Leasing Corpo-
ration, and James William Marshall, Ap-
pellees.

No. 01–95–01239–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 1997.

Opinion Supplementing Decision to
Reflect En Banc Vote Sept. 11, 1997.

---

**634**

Frank W. Mitchell, Houston, for Appellant.

Gene F. Creely, II, John H. Boswell, Marie R. Yeates, Houston, for Appellees.

Before SCHNEIDER, C.J., and ANDELL and TAFT, JJ.

## OPINION

ANDELL, Justice.

Appellant, Rueben C. Johnson, appeals from a take-nothing summary judgment in favor of Standard Fruit and Vegetable Company, Inc., Bright Truck Leasing Corporation, and James Marshall (collectively, appellees). In this appeal, we are asked to determine whether there is a cause of action in negligence solely for emotional distress [1] damages caused by a breach of the duty of vigilance imposed on the operator of a motor vehicle on a public highway. We also address whether the trial court erroneously rendered summary judgment on appellant's cause of action for intentional infliction of emotional distress. We reverse in part and affirm in part.

### Facts

Rueben Johnson is a Vietnam veteran, active in focusing attention on the plight of individuals who are missing in action or are prisoners of war due to the Vietnam War. In support of this cause, on May 21, 1990, Johnson participated in a march called "The Last Patrol." Johnson was near the front of the walking procession that was followed by a deputy sheriff in his squad car with emergency lights flashing.

As the march proceeded down the highway,[2] James Marshall, a driver for Standard Fruit, crashed the tractor trailer he was driving into the rear of the procession. The tractor trailer hit the squad car, killing the deputy. After realizing the initial impact, Johnson turned and observed the tractor trailer in the air on its way to colliding with a pickup truck. Everybody in the march moved off the road to the right. The tractor trailer came to a stop approximately two car lengths from Johnson.

The accident exacerbated Johnson's pre-existing condition known as posttraumatic stress disorder (PSD). Johnson's PSD originated from his experience in Vietnam where he sustained, among others, injuries requiring above-the-knee amputation of both legs. Johnson's PSD includes trembling, twitching, feeling shaky, tense or achy muscles, physical restlessness, easy fatigability and tiring, shortness of breath with anxiety, heart pounding and racing, frequent sweating, dryness in mouth, gastrointestinal distress, hot flashes, frequent urination, and difficulty swallowing. Johnson also experiences a sense of being "keyed up" or "on edge," startle phenomena, difficulty with concentration, and a sleep disturbance. All of Johnson's ailments have been aggravated because of the accident.

### Procedural Summary

Johnson's second amended petition alleged claims for (1) negligent infliction of physical injury, (2) intentional infliction of emotional distress, (3) causing physical and mental injuries in violation of a special relationship between appellees and the driving public by virtue of state and federal safety regulations, and (4) the infliction of mental and physical injuries by gross negligence. Negligence

---

1. At the outset, we note the interchangeable use of the terms "mental anguish," "emotional distress," and "emotional trauma" as used by appellant, appellees, and the cited case law. For the sake of continuity in this opinion, however, we use the term "emotional distress" throughout.

2. The march was conducted on Highway 59 from Cleveland toward Houston.

and gross negligence on the part of Standard Fruit was also alleged for putting an unsafe driver on the road, failing to encourage its drivers to drive safely, and failing to ascertain if Marshall was a safe driver.

Appellees filed a motion for summary judgment seeking denial of recovery for: (1) physical injuries on the basis of Johnson's deposition testimony that he suffered no physical injuries in the accident and (2) emotional injuries because Johnson was not a direct victim of a tort and was not bringing suit under the wrongful death statute or as a bystander who had witnessed a close relative's death or injury. Appellees specifically addressed four theories of recovery for emotional injuries, seeking denial of recovery under each: (1) intentional infliction, on the basis that Marshall's conduct was not willful, wanton, extreme, or outrageous; (2) violation of a special relationship created by safety regulations, on the basis that no special relationship exists between users of a roadway; (3) egregious conduct, on the basis that it is not a recognized cause of action; and (4) gross negligent infliction, also on the basis that it is not a recognized cause of action.

Johnson's response first detailed controverted facts that raised fact issues about the willfulness and outrageousness of Marshall's conduct in causing the accident. Specifically, Johnson noted: (1) the absence of any corroboration of the presence of a red container truck that Marshall claimed, after the fact, blocked his view; (2) the clear view a driver would have had for a mile even with a container truck in front; (3) Marshall's admission at the time of the accident that he was very tired and could have possibly fallen asleep while driving; and (4) skid marks that indicated very little braking before impact. Next, Johnson pointed out that even though he admitted to not being physically injured in the accident, he suffered physical injury as it is legally defined, i.e., as the result of fear or mental shock caused by negligence.

Johnson's response then presented reasons for recovery for emotional injuries under four causes of action: (1) intentional infliction of emotional distress, raising fact issues as to recklessness and outrageousness; (2) the validity of a cause of action for violation of the common-law or traffic-regulation duty of a driver to keep a vigilant lookout for a pedestrian under Boyles v. Kerr, 855 S.W.2d 593 (Tex.1993); (3) the validity of a cause of action for gross negligence, a theory not denied in Boyles; and (4) a bystander's claim, raising a fact issue that Johnson's relationship with one of the injured marchers was sufficiently close because she was an officer of a veteran's organization run by Johnson.

The trial court granted appellees' motion for summary judgment without specifying a particular basis.

### Limited Appeal

In one point of error, Johnson limits his appeal to only two of his theories of recovery. He claims there are genuine issues of material fact which precluded summary judgment for both intentional infliction of emotional distress and emotional distress damages proximately caused by breach of a driver's duty to highway users on a public road.

### A. Standard of Review

A defendant-movant must present summary judgment proof establishing, as a matter of law, there is no genuine issue of material fact on one or more of the essential elements of the plaintiff's cause of action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex.1970). If the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue pertaining to that element to avoid a summary judgment. "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 936–37 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985); RTC v. Ammons, 836 S.W.2d 705, 709 (Tex.App.—Houston [1st Dist.] 1992, no writ). Thus, every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in his favor. Continental Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499, 501 (Tex.1988).

## B. Negligent Infliction of Emotional Distress

### 1. Historical Development

The tort of negligent infliction of emotional distress was first thought to have been created by *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890) (recognizing tort of negligent infliction of emotional distress).[3] *See Boyles*, 855 S.W.2d at 595. In *Hill*, a pregnant woman suffered a miscarriage when she witnessed the defendant brutally beat two men in her yard. The defendant knew Hill and knew of her pregnancy. Hill sued for her physical injuries under a negligence cause of action, asserting that (1) the emotional distress of witnessing the beatings produced her injuries and (2) the defendant should have reasonably anticipated the danger to her. The court concluded that the defendant caused Hill bodily injury by means of emotional distress, and it was for the *physical injury*, not the *emotional distress* for which recovery was sought and for which recovery was granted. *Hill*, 13 S.W. at 59.

The court in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), actually created the tort of negligent infliction of emotional distress. *Boyles*, 855 S.W.2d at 595. In *Garrard*, a hospital negligently disposed of the Garrards' stillborn baby in an unmarked, common grave without their knowledge or consent. The Garrards asserted a cause of action for negligent infliction of emotional distress, without alleging that they suffered any physical manifestation. The court in *Garrard* expanded *Hill* by eliminating the physical manifestation element, reasoning that the physical manifestation element was an arbitrary indication of one's emotional distress because it is both "overinclusive" and "underinclusive."[4] Thus, the court created a negligence cause of action solely for the infliction of emotional distress. Based upon its conclusion that *Garrard* erroneously

interpreted *Hill*, the court in *Boyles* abolished the negligent infliction of emotional distress cause of action. *Boyles*, 855 S.W.2d at 595–96.

In *Boyles*, Kerr sued Boyles after Boyles surreptitiously videotaped their sexual intercourse and subsequently showed the tape to several of his friends. Kerr originally brought suit asserting claims for intentional invasion of privacy, negligent invasion of privacy, and negligent infliction of emotional distress. However, Kerr abandoned her actions for intentional and negligent invasion of privacy and proceeded to the jury only on the negligent-infliction-of-emotional-distress claim. *Id.* at 594, 601.

The court in *Boyles* dismissed Kerr's action, stating there is "no general duty not to negligently inflict emotional distress." *Id.* at 597. The court limited this statement, however, by saying, "Our decision does not affect a claimant's right to recover [emotional distress] damages caused by defendant's breach of some other legal duty." *Id.* Thus, although *Boyles* eliminated a cause of action for the negligent infliction of emotional distress, it appears at first blush that *Boyles* allows damages solely for emotional distress caused to another due to negligence when the defendant breaches *any other* legally recognized duty.

### 2. Johnson's Reliance on *Boyles*

Johnson argues that a claim for emotional distress damages based in negligence is not necessarily a claim for "negligent infliction of emotional distress." Johnson acknowledges that *Boyles* precludes recovery for the latter based on some free-floating duty not to inflict emotional distress. However, Johnson relies upon the limiting language in *Boyles* for the proposition that the negligent breach of some other legally recognized duty gives rise to compensable emotional distress damages.

---

**3.** *Hill* recognized the tort of negligent infliction of emotional distress; however, compensation was not based on the emotional distress, it was based on the physical manifestation. *St. Elizabeth Hospital v. Garrard* actually created the cause of action in its purest form—allowing compensation solely for one's emotional distress due to the negligence of another. 730 S.W.2d 649 (Tex.1987).

**4.** "It is overinclusive because it permits recovery for [emotional distress] when the suffering accompanies or results in any physical impairment, regardless of how trivial the injury. More importantly, it is underinclusive because it arbitrarily denies court access to persons with valid claims they could prove if permitted to do so." *Garrard*, 730 S.W.2d at 652.

In this regard, Johnson cites *Hatcher v. Mewbourn*, 457 S.W.2d 151 (Tex.Civ.App.—Texarkana 1970, writ ref'd n.r.e.), for the proposition that a motorist operating a vehicle on a public street has a duty to be alert and on watch for all that affects safe operation and is normally visible to him in the exercise of due care. *Id.* at 153. Thus, Johnson argues that because *Boyles* does not affect a claimant's right to recover emotional distress damages caused by a defendant's breach of some other legal duty and because *Hatcher* establishes a duty of care to be exercised by motorists, appellees' breach of this duty caused his emotional distress and, therefore, his emotional distress damages are compensable.

Johnson also relies upon *Rodriguez v. Motor Express, Inc.*, 909 S.W.2d 521 (Tex. App.—Corpus Christi 1995), *rev'd*, 925 S.W.2d 638 (Tex.1996). In *Rodriguez*, the appellant parked his tractor-trailer rig on the shoulder of Highway 281 in front of Motor Express, a trucking business abutting Highway 281, because Motor Express did not provide adequate parking. Jerry Rodriguez and his cousin-in-law, Anselmo Lugo, Jr., were inspecting the tires of Rodriguez's rig when Enrique Guzman, a driver traveling at a high rate of speed on the highway, lost control of his vehicle and fatally struck Anselmo; Rodriguez escaped injury by jumping out of the vehicle's path. *Id.* at 524.

Rodriguez brought, among others, a cause of action for negligent infliction of emotional distress against Motor Express asserting that Motor Express's negligence as a landowner in not providing a safe parking area proximately caused him to suffer severe emotional distress. Relying on *Boyles*, the *Rodriguez* court stated that Motor Express owed a duty as a landowner to provide safe parking and that the breach of such duty gives rise to a negligence-based action for emotional distress. *Id.* at 528.

We do not read the pertinent language from *Boyles* so broadly. Neither did the Texas Supreme Court; it reversed *Rodriguez*. *Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex.1996). We read *Boyles* as saying that emotional distress damages already recognized as compensable when caused by the breach of an established legal duty are unaffected by its decision.[5] *Boyles* set out seven cases as examples of its statement. The causes of action in the cases listed are negligent infliction of direct physical injury, wrongful death, battery, failure of telegraph company to timely deliver death message, invasion of privacy, defamation, and negligent handling of a corpse. *Boyles*, 855 S.W.2d at 597. Later in the opinion, the telegraph-message and handling-of-a-corpse cases were explained as involving a duty based on a "special relationship" between the parties. *Id.* at 600. No such relationship giving rise to a "special duty" was found in *Boyles* despite the intimate relationship of the parties. *Id.* at 600.

Furthermore, we have found no case law establishing a right to recovery for emotional distress based upon the breach of a legal duty of vigilance on behalf of a driver to keep a lookout for pedestrians on the roadway. While a legal duty of vigilance was involved in *Hatcher*, there were actual damages to the claimant's car in that case and no apparent claim of emotional distress damages. *Hatcher*, 457 S.W.2d at 152.

### 3. Special Relationship Test

We have also considered whether the relationship between a driver and another person on the public roadway is a "special relationship" giving rise to a "special duty" allowing recovery for causing emotional distress. In a recent case, the Supreme Court found such a

---

**5.** That the applicability of the statement was so limited is supported by the statement later in the opinion disavowing a requirement that emotional distress be manifested physically: "Where emotional distress is *a recognized element* of damages for breach of a legal duty, the claimant may recover without demonstrating a physical manifestation of the emotional distress." *Id.* at 598 (emphasis added). Emotional distress is a recognized element of damages for breach of a legal duty in such cases as defamation; *Leyendecker & Assoc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); invasion of privacy, *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973); negligent handling of a corpse, *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.); and negligent delivery of a death message, *Stuart v. Western Union Tel. Co.*, 66 Tex. 580, 18 S.W. 351 (1885).

"special relationship" between doctor and patient allowing emotional distress damages for breach of the doctor's duty to provide competent medical care. *See Krishnan v. Sepulveda,* 916 S.W.2d 478, 482 (Tex.1995).

We observe that in the "special relationship" category of cases, which allows compensation solely for emotional distress due to the negligence of another (doctor-patient, mortuary-deceased's family, telegraph office-customer), there appear to be three common elements: (1) a contractual relationship between the parties; (2) a particular susceptibility to emotional distress on the part of the plaintiff; and (3) the defendant's knowledge (whether he knew or should have known) of the plaintiff's particular susceptibility to emotional distress based upon the circumstances. When these elements are satisfied, it appears that emotional distress due to the negligence of another is compensable. *See generally Krishnan,* 916 S.W.2d at 482; *Wyatt,* 442 S.W.2d at 906–07; *Stuart,* 18 S.W. at 352.

The fact that *Boyles* overruled *Garrard,* when *Garrard* squarely encompasses these three elements, seems to undermine this test. However, *Boyles* concluded that the *holding* of *Garrard* was correct and only overruled "the language of *Garrard* to the extent that it recognizes an independent right to recover for negligently inflicted emotional distress." *Boyles,* 855 S.W.2d at 595–96. The result in *Garrard* is consistent with other "special relationship" cases.

### 4. Conclusion

■ This case involves only one of the elements common to the "special relationship" cases, namely Johnson's particular susceptibility to emotional distress. Thus, no "special relationship" giving rise to compensable emotional distress damages exists. Furthermore, while the duty of a driver to avoid causing physical injury to fellow users of public roadways is established, no similar duty to avoid causing emotional distress by itself has been found. Therefore, we are constrained to overrule the first portion of Johnson's point of error challenging the trial

court's rendition of summary judgment regarding the negligent causation of emotional distress to a pedestrian by a driver.

We note, however, the present case is most factually analogous to *Houston Electric Co. v. Dorsett,* 145 Tex. 95, 194 S.W.2d 546 (1946). In *Dorsett,* a pedestrian was narrowly missed by a bus. 194 S.W.2d at 546. Although the bus itself did not inflict physical injury to Dorsett, she suffered emotional distress that caused a physical manifestation. *Id.*

In her action against Houston Electric Company, she claimed damages for extreme nervousness, severe headaches, lapse of memory, and brain deterioration as a result of the great emotional upset, shock, and fright caused by the incident. 194 S.W.2d at 546. Relying on *Hill v. Kimball* for the proposition that a physical, personal injury may be produced through a strong emotion of the mind, the supreme court held that Dorsett had alleged a proper cause of action. *Dorsett,* 194 S.W.2d at 547–48. Although in the present case it appears that Johnson incurred physical manifestations produced by emotional distress, he does not argue that the trial court erred by granting appellees' motion for summary judgment in regard to negligence causing physical injuries; rather, Johnson confines his point of error on appeal to negligence causing emotional distress.[6]

### C. Intentional Infliction of Emotional Distress

Johnson contends in the second portion of his sole point of error that the trial court erred by rendering summary judgment as to his claim for intentional infliction of emotional distress because he is the direct victim of the inflicted conduct rather than merely a bystander.

Appellees' motion for summary judgment made a general attack contending that Johnson is not the direct victim of a tort and further argued that Marshall's conduct was

---

**6.** Although we hold there is no compensation solely for emotional distress due to a negligent act of another, other than in the "special relationship" category of cases, we note that an

action is viable if it relies on the reasoning of *Hill* and *Dorsett* and seeks compensation for physical injuries manifested through emotional distress brought about by a negligent act.

neither extreme and outrageous, nor could it be construed as reckless.

### 1. Facts

Viewing the evidence in the light most favorable to the nonmovant, Johnson, and indulging every inference in his favor, the record reveals that: (1) Marshall was driving a loaded tractor-trailer rig on Highway 59, traveling 15 miles-per-hour over the speed limit; (2) Marshall was very tired and most likely fell asleep at the wheel just prior to the accident; (3) there was very little braking prior to impact with the sheriff's vehicle at the rear of the group; (4) the tractor trailer first hit the sheriff's vehicle, then continued up through the procession until it came to rest approximately two car lengths from Johnson; (5) although several individuals were physically injured directly by the tractor trailer, Johnson's injuries consisted of the aggravation of his PSD symptoms as a result of his severe emotional distress caused by Marshall's rig; and (6) the day of the accident was clear, the sheriff's vehicle lights were flashing, and the accident occurred approximately one mile from a knoll; thus, the march should have been seen by a diligent driver in ample time to prevent the accident.

### 2. Elements

■ Texas recognizes the tort of intentional infliction of emotional distress based on section 46 of the Restatement (Second) of Torts. *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex.1993); RESTATEMENT (SECOND) OF TORTS § 46 (1965). The elements of such a claim are: (1) an intentional or reckless act that is (2) extreme or outrageous in character, (3) caused the plaintiff emotional distress, and (4) severe. *Twyman*, 855 S.W.2d at 621. Due to the lack of Texas cases interpreting the Restatement, we examine the text of section 46.

Section 46(1) holds an actor liable for intentional or reckless[7] conduct causing severe emotional distress without requiring that the victim suffer bodily (physical) harm in order to recover. Section 46(2) discusses conduct "directed at" a "third person" victim and allows bystander recovery for severe emotional distress without bodily harm only if the bystander is a member of the victim's immediate family. RESTATEMENT (SECOND) OF TORTS § 46 (1965).

Appellees have not challenged Johnson's claim that Marshall's driving was reckless or that Johnson suffered severe emotional distress. The only issues are whether Marshall's conduct was extreme or outrageous and whether Marshall's conduct was directed at Johnson.

### 3. Extreme or Outrageous

■ Marshall was driving 15 miles per hour over the speed limit and apparently fell asleep at the wheel. There is evidence he continued driving the tractor trailer while he was tired. Marshall had an unobstructed view of the road for at least a mile. A fair inference from the circumstances is that Marshall placed other highway users in serious danger. The evidence, as presented by Johnson could support a finding of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621. Viewing the facts in the light most favorable to Johnson, there is at least a fact question whether Marshall's actions were extreme or outrageous.

### 4. Direct Victim

■ There appears to be no case law that addresses whether section 46(1) applies in situations in which a group of people are within a zone of danger similar to the marchers in this appeal. RESTATEMENT (SECOND) OF TORTS § 46(1) (1965). We see nothing in section 46(1) that excludes the situation when a defendant exercises extreme or outrageous conduct towards a group. *Id.*

Marshall's motorized somnambulism cannot be characterized as being directed solely at the deputy—in fact, Marshall's "conduct" was a direct threat to all the marchers who conceivably could have encountered the tractor trailer plowing through their midst. *See id.* The dissenting opinion would require

---

7. "Recklessness" means that the actor intended to perform the act while not intending the result-ing harm. RESTATEMENT (SECOND) OF TORTS § 500 cmt.f (1965).

that liability for the tort of intentional or reckless infliction of emotional distress be based on outrageous conduct which is consciously *directed at* a particular individual. In the absence of any authority or any compelling reason to engraft additional qualifications onto the word "directed," we decline to create a new element for this well established cause of action.[8]

### Conclusion

We affirm the trial court's summary judgment to the extent it denied recovery based on Johnson's negligent-infliction-of-emotional-distress claim. We reverse the trial court's summary judgment to the extent it denied recovery based on Johnson's intentional-infliction-of-emotional-distress claim. Finally, we remand the cause to the trial court for further proceedings.

TAFT, J., dissenting.

TAFT, Justice, dissenting.

I respectfully dissent in part to the judgment. I would hold that Standard Fruit established as a matter of law: (1) Marshall's conduct was not extreme and outrageous; and (2) a claim for intentional infliction of emotional distress does not apply to the facts of this case where the tortfeasor's conduct was not directed at the plaintiff.

The Texas Supreme Court in *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993), expressly adopted the tort of intentional infliction of emotional distress as set out in section 46 of the Restatement (Second) of Torts. *Twyman*, 855 S.W.2d at 622. The court outlined four elements constituting the tort of intentional infliction of emotional distress: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Id.* at 621.

8. The Texas Supreme Court adopted the tort of intentional infliction of emotional distress in 1993, becoming the forty-seventh state to do so.

### Directed At

Addressing appellees' general attack that Johnson is not the direct victim of a tort, we must determine whether intentional infliction of emotional distress embraces the fact situation in this case. In the absence of Texas case law on point, I agree with the majority that we must look to the source of this new tort, section 46 of the Restatement (Second) of Torts:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress *to another* is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm.

(2) Where such conduct is *directed at* a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

RESTATEMENT (SECOND) OF TORTS § 46 (1965) (emphasis added).

Section 46 contemplates two types of plaintiffs suffering from emotional distress caused by the conduct of the defendant. Section 46(1) contemplates a plaintiff who is the direct victim of the tort, *i.e.*, the direct object of the defendant's intentional or reckless conduct. The direct victim, under section 46(1), may receive compensation for his severe emotional distress regardless of a physical manifestation. If the plaintiff experiences a physical manifestation, he may be compensated for that, as well. *See* RESTATEMENT (SECOND) OF TORTS § 46(1) (1965).

Section 46(2) contemplates a bystander theory where one may receive compensation for his emotional distress caused by witnessing the requisite conduct inflicted upon a third person. In this instance, the conduct must first be *directed at* a particular third

*See Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993).

person. Then, if the plaintiff is an immediate family member of the third person, present at the time the extreme or outrageous conduct is directed at the third person, the plaintiff may receive compensation solely for emotional distress regardless of a physical manifestation. RESTATEMENT (SECOND) OF TORTS § 46(2)(a) (1965). If the plaintiff is not an immediate family member, the plaintiff must incur a physical manifestation from the emotional distress in order to be compensated. RESTATEMENT (SECOND) OF TORTS § 46(2)(b) (1965).

Subsections (1) and (2) of section 46 were obviously intended to be read together. Subsection (2) implicitly incorporates the description of conduct from subsection (1). "Such" conduct in subsection (2) necessarily refers to "extreme and outrageous" conduct in subsection (1). Because of the interdependence of the two subsections, it follows that conduct causing severe emotional distress "to another" in subsection (1) means conduct "directed at" that other person, just as the conduct is "directed at" a third party in subsection (2). That subsection (1) contemplates conduct "directed at" another is further shown by the fact that all of the illustrations provided in the Restatement involve conduct directed at a particular individual. *See* RESTATEMENT (SECOND) OF TORTS § 46 cmts. d–1 illus. 1–22 (1965).

Therefore, from the context of the Restatement, I believe the language "to another" in section 46(1) contemplates an act that is "directed at" another and, thus, the conduct of the actor must be *directed at a particular individual*[1] for that individual to be compensated for emotional distress under section 46(1). To hold otherwise would not only create inconsistency between the subsections, it would produce an actual conflict between subsections (1) and (2)(b). Subsection (2)(b) requires a bystander to suffer bodily harm resulting from severe emotional distress. If "to another" in subsection (1) included others present, in addition to the particular person(s) to whom the extreme and outrageous conduct was directed, then a bystander could recover solely for emotional distress without the necessity of showing bodily harm as required by subsection (2)(b).

Furthermore, a perusal of over 35 Texas cases citing *Twyman* as authority for their intentional infliction of emotional distress claim reveals that *all* involve conduct directed at another, *i.e.,* interpersonal conduct between the parties.[2] Finally, Johnson cites no

1. I do not mean by this that the conduct would not be covered if it were directed at a particular group of individuals. What I see to be the gist of the tort of intentional/reckless infliction of emotional distress is a conscious effort to cause emotional distress in others.

2. *See Randall's Food Markets, Inc., v. Johnson,* 891 S.W.2d 640 (Tex.1995) (employer's questioning of employee); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695 (Tex.1994) (claims adjuster's rude conduct toward insured worker); *Massey v. Massey,* 867 S.W.2d 766 (Tex.1993) (husband's alleged outrageous conduct directed at his wife); *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374 (Tex.1993) (defendant's conduct of transmitting sexual disease to plaintiff); *Wornick Co. v. Casas,* 856 S.W.2d 732 (Tex.1993) (employer's conduct in having security guard escort terminated employee from premises); *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993) (boyfriend's conduct in videotaping sexual acts with girlfriend); *DeMoranville v. Specialty Retailers, Inc.,* 909 S.W.2d 90 (Tex.App.—Houston [14th Dist.] 1995), *rev'd in part,* 933 S.W.2d 490, 39 Tex.Sup.Ct.J. 638 (1996) (supervisor's alleged age discrimination against employee); *George Grubbs Enterprises v. Bien,* 881 S.W.2d 843 (Tex.App.—Fort Worth 1994), *rev'd on other grounds,* 900 S.W.2d 337 (Tex.1995) (customer's alleged mistreatment by automobile dealership during negotiations); *Wieler v. United Savings Ass'n of Texas,* 887 S.W.2d 155 (Tex.App.—Texarkana 1994), *writ denied per curiam,* 907 S.W.2d 454 (Tex.1995) (mortgagee's conduct toward mortgagor); *Villasenor v. Villasenor,* 911 S.W.2d 411 (Tex.App.—San Antonio 1995, no writ) (wife's conduct toward husband); *Turner v. Roadway Express, Inc.,* 911 S.W.2d 224 (Tex.App.—Fort Worth 1995, writ denied) (employer's accusations of theft against employee); *Straus v. Kirby Court Corp.,* 909 S.W.2d 105 (Tex.App.—Houston [14th Dist.] 1995, no writ) (landlord's conduct in evicting tenant); *Free v. American Home Assur. Co.,* 902 S.W.2d 51 (Tex.App.—Houston [1st Dist.] 1995, no writ) (employer's alleged defamatory comments about former employee); *Beiser v. Tomball Hosp. Auth.,* 902 S.W.2d 721 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (employer's conduct in terminating employee); *Lee v. Levi Strauss & Co.,* 897 S.W.2d 501 (Tex.App.—El Paso 1995, no writ) (clothing manufacture's interference with employment contracts of two employees); *Bhalli v. Methodist Hosp.,* 896 S.W.2d 207 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (employer's conduct toward employee); *Newton v. Newton,* 895 S.W.2d 503 (Tex.App.—Fort Worth 1995, no writ) (husband's conduct toward his

case authorizing liability for intentional infliction of emotional distress in the absence of such interpersonal conduct. Thus, determining that "to another" means "directed at another," I would next determine whether Marshall's conduct was directed at Johnson.

Again, lacking Texas authority on point, I reviewed other jurisdictions for a resolution of this issue and found a factually similar case which is helpful. In *Dornfeld v. Oberg*, 503 N.W.2d 115, 119 (Minn.1993), the Supreme Court of Minnesota addressed the issue of whether reckless conduct was directed at a particular person for the purposes of sustaining an intentional infliction of emotional distress cause of action.

The facts in *Dornfeld* are as follows. Don Dornfeld and his wife, Barbara, were driving home on a highway at approximately 11:00 p.m. when their car had a flat tire. Mr. Dornfeld pulled the car onto the shoulder of the highway, turned on the car's emergency flashers, and proceeded to change the rear, driver's-side tire. Mrs. Dornfeld remained in the car.

While changing the tire, Mr. Dornfeld was struck by a car driven by Scott Oberg. Oberg's car dragged Mr. Dornfeld over 200 feet, leaving him in a roadside ditch. Oberg claimed that he never saw the Dornfeld car

prior to impact. Mr. Dornfeld was pronounced dead at the scene.

Mrs. Dornfeld, who remained in the car, felt the impact but did not see Oberg's vehicle or the collision. After the collision, Mrs. Dornfeld got out of the car and asked where her husband was. Witnesses and police officers said her husband had been found in a ditch and that he was dead. She suffered no significant physical injuries as a result of the collision; however, she claimed that she began to suffer from Post-traumatic Stress Disorder. Subsequently, Mrs. Dornfeld sued Oberg for intentional infliction of emotional distress under a "reckless" analysis.

The Minnesota court analyzed the Restatement and determined that one is liable for intentional infliction of emotional distress under a "reckless" analysis when the actor intends the act, but does not intend the harm resulting from the act. *Dornfeld v. Oberg*, 503 N.W.2d 115, 118–19 (Minn.1993) (citing RESTATEMENT (SECOND) OF TORTS § 500 cmt. f (1965)), (defining "recklessness" as an intentional act with unintended consequences). Furthermore, the court determined that the express language of section 46(2) contemplates that an actor's conduct must be "directed at" a particular third person. *Dorn-*

---

wife); *Nayef v. Arabian American Oil Co.*, 895 S.W.2d 825 (Tex.App.—Corpus Christi 1995, no writ) (employer's conduct toward employee); *Cote v. Rivera*, 894 S.W.2d 536 (Tex.App.—Austin 1995, no writ) (employer's termination of an at-will employee); *Carr v. Mobile Video Tapes, Inc.*, 893 S.W.2d 613 (Tex.App.—Corpus Christi 1994, no writ) (television station's preparing and broadcasting story about arrest warrant of horse owner for cruelty to animals); *Metzger v. Sebek*, 892 S.W.2d 20 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (defendant's conduct in allegedly falsely accusing plaintiff as child abuser); *Wyatt v. Kroger*, 891 S.W.2d 749 (Tex.App.—Fort Worth 1994, writ denied) (grocery store's conduct in handling appellant's complaint); *Washington v. Knight*, 887 S.W.2d 211 (Tex.App.—Texarkana 1994, writ denied) (bystander theory; conduct directed at third party); *Sebesta v. Kent Electronics Corp.*, 886 S.W.2d 459 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (employer's conduct in terminating employee); *Behringer v. Behringer*, 884 S.W.2d 839 (Tex.App.—Fort Worth 1994, writ denied) (wife's conduct toward husband); *Shaheen v. Motion Industries*, 880 S.W.2d 88 (Tex.App.—Corpus Christi 1994, writ denied) (employer's conduct in discharging employee); *Regan v. Lee*, 879 S.W.2d 133 (Tex.

App.—Houston [14th Dist.] 1994, no writ) (driver's use of vulgar language at another driver during traffic altercation); *Waddell v. Kaiser Foundation*, 877 S.W.2d 341 (Tex.App.—Dallas 1994, writ denied) (healthcare provider's denial of participant's benefits); *Stites v. Gillum*, 872 S.W.2d 786 (Tex.App.—Fort Worth 1994, writ denied); *Reeves v. Western Co. of N. Am.*, 867 S.W.2d 385 (Tex.App.—San Antonio 1993, writ denied) (employer's conduct toward prospective employee); *Garcia v. Andrews*, 867 S.W.2d 409 (Tex.App.—Corpus Christi 1993, no writ) (manager allegedly sexually harassed employee); *Tarleton State University v. Rosiere*, 867 S.W.2d 948 (Tex.App.—Eastland 1993, dism. agr.) (president of state university refused to recommend tenure for professor); *Motsenbocker v. Potts*, 863 S.W.2d 126 (Tex.App.—Dallas 1993, no writ) (employer's modification of employee's health insurance); *Qualicare of East Texas, Inc. v. Runnels*, 863 S.W.2d 220 (Tex.App.—Eastland 1993, no writ) (employer's conduct toward employee); *Haryanto v. Saeed*, 860 S.W.2d 913 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (hotel guest's conduct toward hotel's employee); *Mitre v. La Plaza Mall*, 857 S.W.2d 752 (Tex.App.—Corpus Christi 1993, writ denied) (mall accused plaintiff of passing counterfeit money).

 

*feld,* 503 N.W.2d at 119. Thus, the court reasoned that in order to hold Oberg liable for intentional (reckless) infliction of emotional distress, his conduct had to be intentionally "directed at" a particular person. *Id.* In disallowing Mrs. Dornfeld's claim for intentional infliction of emotional distress, the court concluded that "[m]ere reckless driving is directed, if at all, only at the driving community generally rather than at a particular individual, and, therefore, such conduct would be insufficient to give rise to a claim for intentional or reckless infliction of emotional distress." [3] *Id.*

Although the Minnesota court's issue involved section 46(2) rather than section 46(1), the Minnesota court's reasoning is applicable to the reckless driving of the character involved here which was not directed at any particular individual. Thus, because I would construe the language "to another" in section 46(1) to mean "directed at another," and because Marshall's conduct was not directed at Johnson, or any other particular individual, Johnson's cause of action for intentional infliction of emotional distress should fail. Therefore, under the facts of this case, I would hold that intentional/reckless infliction of emotional distress does not apply as a matter of law.

### Extreme or Outrageous

Even if intentional/reckless infliction of emotional distress included the fact situation in this case, I would hold that Marshall's conduct does not rise to the level of extreme or outrageous conduct. *See Twyman,* 855 S.W.2d at 621. Initially it is a question of law whether conduct is so extreme or outrageous to permit recovery for intentional infliction of emotional distress. *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); *Sebesta v. Kent Elec. Corp.,* 886 S.W.2d 459, 462 (Tex.App.—Houston [1st Dist.] 1994, writ ref'd). Viewing the evidence in the light most favorable to Johnson, I assume Marshall was driving 15 miles per hour over the speed limit while very tired and fell asleep at the wheel of an 18 wheeler with a loaded trailer.

Extreme or outrageous conduct is worse than criminal or malicious conduct; it is beyond all bounds of decency, not merely offensive, deplorable or even unbearable, but utterly intolerable in a civilized community. *See Twyman,* 855 S.W.2d at 621. Driving while tired and falling asleep at the wheel, even the wheel of an eighteen wheeler, is not the type of conduct which would arouse the resentment of an average member of the community to exclaim "outrageous." *See generally id.* (outlining standard).

In addition, holding that driving while tired is outrageous would certainly lead to the conclusion that the act of drunk driving is outrageous. I do not believe the supreme court intended every drunk driving accident to give rise to a separate tort of intentional infliction of emotional distress for victims and bystanders. I would decline to expand this tort as the majority has.

### Conclusion

Because I would hold, as a matter of law, that neither negligent infliction of emotional distress nor intentional/reckless infliction of emotional distress is available under the facts of this case, I would overrule Johnson's point of error and affirm the trial court's summary judgment. Accordingly, I respectfully dissent to the reversal in part of the trial court's summary judgment.

### SUPPLEMENTAL OPINION

PER CURIAM.

We supplement our opinion in this cause number issued August 29, 1997, to reflect the en banc vote of the Court. TEX. R. APP. P. 41.2, 49.7.

On Justice Nuchia's motion for en banc consideration, Chief Justice Schneider and Justices Mirabal, O'Connor, Wilson, and Andell voted to deny en banc consideration.

Justices Cohen, Hedges, Taft, and Nuchia voted to grant en banc consideration.

---

**3.** I note that this does not contemplate the situation where a reckless driver intends to take some

action against, or inflict some harm upon, a particular person or persons.