ACCEPTED
14-13-00502-CV
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
1/5/2015 11:48:34 PM
CHRISTOPHER PRIN
CLERK

## No. 14-13-00502-CV
IN THE COURT OF APPEALS
FOR THE FOURTEEN DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

1/5/2015 11:48:34 PM

CHRISTOPHER A. PRINE
Clerk

**CHRISTINE E. REULE,**
*Appellant*

v.

**M & T MORTGAGE, M & T BANK, BAYVIEW LOAN SERVICING, LLC, BAYVIEW FINANCIAL TRADING GROUP, LP, BAYVIEW FINANCIAL,LP, AND HUGHS, WATTERS, ASKANASE, LLP**
*Appellee*

_____

On Appeal from Cause No. 200875636
234th Judicial District Court of Harris County, Texas

_____

### APPELLANT'S REPLY BRIEF

CHRISTINE E. REULE
Pro Se
1831 Sherwood Forest #24
Houston, Texas 77043
(713) 365-0535


APPELLANT REQUESTS ORAL ARGUMENT

## IDENTITY OF PARTIES AND THEIR COUNSEL

| PARTIES | COUNSEL |
|---|---|
| CHRISTINE E. REULE | Pro Se<br>1831 Sherwood Forest #24<br>Houston, Texas 77043<br>(713) 365-0535 |
| M& T MORTGAGE, M & T BANK, BAYVIEW LOAN SERVICING, LLC, BAYVIEW FINANCIAL TRADING GROUP, LP, BAYVIEW FINANCIAL,LP | Daniel Patton<br>Scott Patton, P.C.<br>3939 Washington Avenue, Suite 203<br>Houston, Texas 77007<br>Telephone: 281-377-3311<br>Fax: 281-377-3267<br>Email: dpatton@scottpattonlaw.com |
| HUGHES, WATTERS, ASKANASE, LLP | C. Ed. Harrell<br>Hughes, Watters & Askanase, L.L.P.<br>Three Allen Center<br>333 Clay, 29th floor<br>Houston, TX 77002<br>Telephone: (713) 759-0818<br>Fax: (713)759-6834 |
| RLZ INVESTMENTS | Richard A. Battaglia<br>P.O. Box 131276<br>Houston, Texas 77219-1276<br>Telephone No. (713) 521-3570<br>Fax: (713) 521-5373<br>Email: rab@rabpc.com |

**Cases**

*Austin v. Countrywide Homes Loans,* 261 S.W.3d 68 (Tex.App.Houston [1st Dist.] 2008)..................................................................................................... 31

Bernard v. Bank of America, N.A., *9, 2013 Tex. App. LEXIS 1045 (Tex. App-San Antonio, Feb. 13, 2013................................................................... 15, 16

Bosque Trading Enterprises, Inc. v. Business Loan Cetner, LLC, (Tex.App.—Waco 2012)........................................................................................................ 34

Brescia v. Slack & Davis, LLP (TexApp.-Austin 2010)............................... 34

Case Funding Network, LP v. Anglo-Dutch Petro, 264 S.W.3d 38 (Tex.App. – Houston [1st Dist.] 2007.................................................................................. 41

*Charter Nat'l Bank-Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex.App.-Houston [14th Dist.] 1989, writ denied)....................................................... 17

*Crider v. Crider,* No. 01-10-00268-CV, 2011 WL 2651794, at *5 (Tex. App.-Houston [1st Dist.] July 7, 2011, pet. denied) (mem. op.) ................... 26

*Employers Cas. Co. v. Peterson,* 609 S.W.2d 579, 585 (Tex. App.—Dallas 1980, no writ)................................................................................................... 20

*Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983)........ 42

*Fort Brown Villas III Condo. Ass'n v. Gillenwater,* 285 S.W.3d 879, 881 (Tex. 2009) ..................................................................................................... 33

Fort Brown Villas v. Gillenwater, 285 SW3d 879 (Tex.2009).................... 28

*Fredonia State  Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994). ........................................................................................................... 27

Freyermuth v. Credit Bureau Services, Inc. 248 F.3d 767, 770, (COA-8th Cir. 2001) ............................................................................................................ 11

*Gainesville Oi & Gas v. Farm Credit Bank, 847 S.W.2d 655, 659 (Tex.App. – Texarkana 1993, no writ)............................................................................ 18

*Glass v. Carpenter,* 330 S.W.2d 530, 537 (Tex.Civ.App.1959)................... 32

*Glaze v. Chase Home Finance, LLC,* 704 F.3d 453, 457 (COA-6th Cir. 2013) ..... 37

Henry v. Chase Home Finance ...................................................................... 17

Holy Cross v. Wolf, 44 W.W.3d 562 (Tex.2001) ........................................ 36

*Hycarbex, Inc. v. Anglo-Suisse, Inc.,* 927 S.W.2d 103, 110 (Tex.App.-Houston [14th Dist.] 1996, no writ). ......................................................................... 41

*In re Saldivar,* No. 11-10689, 2013 WL 2452699 (Bankr. S.D. Tex. June 5, 2013) ............................................................................................................ 30

*Irwin v. Par-Oil Well Servicing Co.,* 349 S.W.2d 277, 278 (Tex.Civ.App.—Texarkana 1961, writ ref'd n. r. e.) ....................................................... 20

Jerman v. Carlisle, McNellie, Rini, Kramer, 130 S.Ct.1605 ....................... 8

*Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex.1982) .............. 42

*Leavings v. Mills,* 175 S.W.3d 301 (Tex.App.Houston [1st Dist.] 2004, no pet.) 31

*Leavings v. Mills,* 175 SW3d 301 (Tex.App. – Houston [1st Dist] 2004.................. 29

Lopez v. Munoz, Hockema & Reed ............................................................... 40

*Martin v. New Century Mortgage Co.,* 377 S.W.3d 79 (Tex.App.-Houston [1st Dist.] 2012)................................................................................................... 31

*Martinez v. Williams,* 312 S.W.2d 742, 752 (Tex.Civ.App.—Houston 1958, no writ)................................................................................................................ 21

*Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259, 261 (8th Cir.1997) . 11

*Miller v. Homecomings Fin., LLC,* 881 F.Supp. 2d 825, 831 (S.D. Tex. 2012 ...... 30

Miller, .......................................................................................................................... 30

Miller, supra @832 ................................................................................................... 30

*Millet v. JP Morgan Chase, N.A.,* 2012 WL 1029497, *4 (W.D.Tex. Mar. 26, 2012)
................................................................................................................................ 31

Morris v. Aguilar, 369 S.W.3d (Texas 2012) ........................................................ 9

*Murphy v. Aurora Loan Servs., LLC,* 699 F.3d 1027, 1033 (8th Cir.2012 ...... 29, 32

*Nguyen v. Kosnoski,* 93 S.W.3d 186, 188 (Tex. App.-Houston [14th Dist.] 2002,
no pet.) ................................................................................................................... 26

*Norwood v. Chase Home Finance LLC,* 2011 WL 197874 (W.D.Tex. Jan. 19,
2011) ...................................................................................................................... 31

*Payne v. Hartford Fire Insurance Co.,* 409 S.W.2d 591, 595 (Tex.Civ.App.—
Beaumont 1966, writ ref'd n. r. e.) .................................................................... 20

*Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) ........................ 9, 26

Peterson v. Black, 980 S.W.2d 818, 823 (Tex.App.-San Antonio 1998). .............. 15

Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.—Corpus
Christi 2008, no pet. ............................................................................................ 17

*Shepard v. Boone,* 99 S.W.3d 263 (Tex.App.-Eastland 2003) ................................ 31

Stevens  v. Charter National Bank – Houston, 781 S.W.2d  368, 371 (Tex.App. –
Houston [14th Dist.] 1989) ................................................................................. 15, 16

*Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.,* 523 S.W.2d 426, 430
(Tex.Civ.App.1975) .............................................................................................. 32

*U.S. Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40, 53 (2011) ........ 31

Univ. Sav. Ass'n v. Springwoods Shopping Ctr, 644 S.W.2d 705, 705 ........... 15, 16

*Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex.1997) .......................................... 9, 26

Wieler v. United States Savings Ass'n of Tex., 887 S.W.2d 155, 158 (Tex.App.-
Texarkana 1994, writ denied) ............................................................................. 18

Wieler, at 160 ........................................................................................................... 19

*Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 – (4th Circuit 2006) ............... 37

Wind Mountain Ranch v. City of Temple, 333  S.W.3d 580, 581, 54 Tex. Sup.
Ct. J 286. (Tex. 2010) .......................................................................................... 36

## Statutes

15 U.S.C. § 1692a(6) ............................................................................................... 34

15 U.S.C. § 1692e ....................................................................................................... 9

15 U.S.C. 692g(b) ....................................................................................................... 8

15 U.S.C. Section 1692c ........................................................................................... 33

Civil Practice and Remedies Code ...................................................................... 32, 33

Property Code Sec. 51.002 ....................................................................................... 12

Section 16.035/16.036 of the Civil Practice and Remedies Code ......................... 33

Section 1692g .............................................................................................................. 9

Section 1692k .............................................................................................................. 9

## Other Authorities

6A C.J.S. ASSIGNMENTS § 132 (2013 ................................................................... 28

## Rules

rule 193.6 ...................................................................................................... 29, 30

Rule 196.3 ...................................................................................................... 30

TEX. R. CIV. P. 193.6 .................................................................................. 30

TEX.R.APP. P. 38.1(f) .............................................................................. 5, 22

TRAP 38.1(g) ................................................................................................ 22

TERMS AND ABREVIATIONS USED WITHIN THE BRIEF

| | |
|---|---|
| BFTG | Bayview Financial Trading Group, LP |
| BLS | Bayview Loan Servicing, LLC |
| Brf. | Appellant's Brief filed on September 29, 2014 |
| CR | Clerk's Record |
| DT | Deed of Trust |
| FDCPA | Fair Debt Collection Practice Act, 15 U.S.C. 1692 |
| FE | Financial Entities i.e., Bayview Loan Servicing, Bayview Financial Trading Group, LP, Bayview Financial, LP, M&T Mortgage, M&T Bank |
| FEBrf. | Financial Entities Response Brief |
| HWA | Hughes Watters Askanase, LLC |
| HWABrf. | HWA and Trustee's Response Brief filed on December 15, 2014. |
| MSJ | Motion for SJ |
| RR | Reporter's record |
| SCR | Supplemental Clerk's Record |
| SJ | Summary Judgment |
| 2CR | Second Supplemental Clerk's Record |
| TFDCA | Texas Fair Debt Collection Act, Texas Finance Code Chapter 392 |
| Trustees | Carolyn Taylor, Sandy Dasigenis, Jeff Leva, and Audrey Lewis |

ARGUMENT AND AUTHORITY:

**HUGHES WATERS ASKANASE AND THE TRUSTEES' RESPONSE BRIEF:**

HWA and the Trustee's arguments are misplaced. (Hereinafter referred to collectively as "HWA") HWAbrf8-9, CR87 is page 5 of the affidavit of Christine Reule. Appellant therefore objects and moves to strike Appellees' argument that they filed any response or motion for SJ as they have no reference to any record before the court.

Appellant's DTPA claims against HWA and the trustees are for fair debt collection violations, and the foreclosure sale of her property. As she correctly noted, HWA and the trustees are debt collectors under both the state and federal act. See Jerman v. Carlisle, McNellie, Rini, Kramer, 130 S.Ct.1605. HWA and Trustees contend that Reule failed to reference the record. This simply is not true. See page 11 of Appellant's rewritten brief. Throughout the statement of facts, Appellate repeatedly referenced the court records and trial transcripts.

Appellant never waived any argument or failed to brief her arguments. Contrary to this statement[1], "[D]isposing of appeals for harmless procedural defects is disfavored." *Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (citing *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex.1997)). Instead, "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Id.* Appellate courts must treat the statement of an issue "as covering every subsidiary question that is fairly included." TEX.R.APP. P. 38.1(f). An appellant can preserve error "in the body of their appellate brief," even if it is not separately listed in the notice of appeal or presented as an issue in the brief. *Perry,* 272 S.W.3d at 586.

The Texas Supreme Court has recognized that many indigent parties are pro se. See Morris v. Aguilar, 369 S.W.3d (Texas 2012) (holding that to require a pro se party to object to a late-filed contest to an affidavit of indigence in order to preserve error — something the party is not likely to know to do — is to eviscerate the protection Rule 20.1(f) is intended to afford.) Reule is completely indigent and did not chose to be unrepresented. One of

---

[1] See Weeks Marine, Inc. v. Garza, 371 S.W.3d. 157, 162 (Tex. 2012)

the issues on appeal is whether or not her attorney should have been allowed to withdraw.  Any errors in failing to comply with the rules is a direct result of the wrongful withdrawal of her attorney who promised to likewise handle the appeal.  However, the trial court allowed him to withdraw to the determent of Appellant.

Lastly, if this court were to find that she inadequately brief her issues as contended by Appellees, then Appellant would show that this court required her to remove over 5000 words from her original brief, thus limiting her ability to adequately brief all of her issues. Appellant did her best, referenced her documents, her evidence, and her legal arguments.

**FAIR DEBT COLLECTIONS CLAIMS**:

Next HWABrf argue that SJ for them because the statute of limitations had run, and no damages.  They cite no reference to the record showing that this argument was presented to the trial court. Rather, they make this argument on appeal, and never filed a cross-appeal.  Therefore, Appellant' objects to this argument as being unsupported and untimely, and not properly before this court.  The

court should therefore reverse and render on Appellant's FDCPA and TFDCA claims.

Even for the sake of argument, the Courts have previously held that in cases regarding abusive debt collection letters, the **date of the violation of the FDCPA occurs on the date the letter that allegedly does not comply with the FDCPA's requirements is sent** to the debtor. *See Mattson v. U.S. West Communications, Inc.,* 967 F.2d 259, 261 (8th Cir.1997), Freyermuth v. Credit Bureau Services, Inc. 248 F.3d 767, 770, (COA-8th Cir. 2001). The overwhelming evidence shows that suit was filed against HWA and the Trustees on April 6, 2009 (CR38). The evidence shows that HWA and Trustees sent debt collection letters, and notices of acceleration after that date and within a year of that date (CR571 in its entirety, 673-701). Each time Appellant request verification of the debt, and the debt was never verified. See CR571, Ex. A6-A14. In fact, HWA and the Trustee foreclosed on her property without providing 30 days notice to cure. Thus, without strict compliance with Texas Property Code Chapter 51, the foreclosure was wrongful and it likewise violates both Acts. HWA and the Trustees had

11

previously stated the debt was paid in full (CR64), and 4 years later foreclosed. This is a direct violation of the Act. Obviously, suit was filed within the 1 year period under FDCPA and 2 years under TFDCA and filed just 2 months after February 9, 2009 debt collection letter HWA and the Trustee sent to her and failed to verify the debt. See CR673. This is likewise true on the limitations arguments made regarding the statute act. Any claim prior to February 9, 2007 would not be covered under FDCPA, however, the claims made by Appellant against HWA the Trustees were after that date. Furthermore, HWA and the Trustees never ceased collection activities after Appellant requested the debt be verified in violation of 15 U.S.C. 1692g(b). (CR571)

Appellant adduce evidence to support her Fair Debt Collection Claims. See CR573, 618-625. See Brf.11&83. HWA and the trustees are specifically named, and what their conduct was i.e., failed to verify the debt upon request, and proceeded with the foreclosure sale of Appellant's property without verifying the debt; and trying to collect on a debt that did not exist, causing confusion as to who owned the debt. Failure to cease all debt activity until

12

such time a debt can be verified is a violation of the act. See Section 1692g, CR645. It was HWA and the trustees that said the debt had been paid in full, then over 4 years later, foreclosed on Appellant's property. CR64, 667-701. HWA even stated that the property was not in foreclosure, and then 4 days later, it foreclosed her property. CR694-695. The references to the record cited by HWA and the trustees clearly demonstrate that Reule was able to prove her claims. The HWA and Trustees don't dispute that they are debt collectors. See CR 645-700. Those documents clearly stated they are debt collectors. They also do not dispute that they failed to verify the debt. They do not dispute the fact that their notices of acceleration, and who actually owned the debt were mispresentations[2] and caused confusion as to who the owner was, another violation of the Act. See CR573, 1004. In fact, Reule specifically references her SJ evidence which contains exhibits showing the debt collection efforts. HWAbrf cite no record showing that the claim was time-barred. No reference to document

---

[2] The Fair Debt Collection Practices Act prohibits a debt collector from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692k of the statute allows the consumer to recover statutory or actual damages for violations of the Act.

supporting HWA/Trustees' claim that the statute of limitations has run renders any such argument waived.

Brf.P.83-101 specifically discuss the fact that attorneys are debt collectors, Trustees, and the mortgage service company. She relates specifically the law, and cites reference to her SJ CR571. Not only did she brief the law and provide facts and evidence to support it, but her SJ motion also sets forth the facts and supporting law, as well as specific violation. See CR621-625 (speaks directly to the violations).

Damages: Exhibit C in support of her MSJ is the business records affidavit of Dr. Sadeghi (CR572, CR943)(Verdigo and physical therapy as a result of lawsuit – support mental anguish claims, intentional infliction of emotion distress, and FDCPA and TFDCA claims). See also CR959 (property value of her home at time of foreclosure). CR943 is the Harris County Property Tax records reflecting the value of her property at the time of foreclosure. The fact that she lost her home which was valued at $69,720 at the time of foreclosure also supported her damage claims. (CR959) To claim

14

she wasn't damaged and had no evidence to adduce damages is without merit.

**WRONGFUL FORECLOSURE**:

HWABrf claims that one must be disposed of possession of her property, and cites Peterson v. Black, 980 S.W.2d 818, 823 (Tex.App.-San Antonio 1998).  However, Peterson actually states: "the mortgagor is only entitled to such recovery if (1) title to the property has passed to a third party."  The case is talking about possession of title to the property, not use of the property.  The notion that wrongful foreclosures requires the property to pass to another is well established.   See Bernard v. Bank of America, N.A., *9, 2013 Tex. App. LEXIS 1045 (Tex. App- San Antonio, Feb. 13, 2013, also see Stevens  v. Charter National Bank – Houston, 781 S.W.2d  368, 371 (Tex.App. – Houston [14th Dist.] 1989); Univ. Sav. Ass'n v. Springwoods Shopping Ctr, 644 S.W.2d 705, 705 (Tex. It is undisputed that title passed to RLZ Investments. (CR870)

The HWAbrf skip over the fact that they have a duty to be a neutral party in the foreclosure proceedings.  CR571, 676-678

clearly show that the Trustees were acting as attorneys for FE. Carolyn Taylor is a partner in HWA, likewise with Ms. Varner.

The duties of HWA & Trustees are well established, and strict compliance with all notice requirements set forth in the deed of trust, as well as Property Code Sec. 51.002 are mandatory. The undisputed fact is no notice to cure was ever given prior to the 7/5/11 foreclosure sale of Appellant's property, a fact of which is undisputed. (CR571, 687-701)

It is undisputed fact that Appellant's property was sold at auction to RLZ Investment ((which has never filed a brief in this appeal)(CR870), and title passed to this third party. **To recover on wrongful foreclosure claims, the property in question must have been sold**. Bernard v. Bank of America, N.A., *9, 2013 Tex. App. LEXIS 1045 (Tex. App- San Antonio, Feb. 13, 2013, also see Stevens v. Charter National Bank – Houston, 781 S.W.2d 368, 371 (Tex.App. – Houston [14th Dist.] 1989); Univ. Sav. Ass'n v. Springwoods Shopping Ctr, 644 S.W.2d 705, 705.

To claim that a wrongful foreclosure can only be asserted if one is evicted from their property after the property was sold to a third party at an auction files in the face of principles of equity,

16

reason, logic, fairness, and gives the foreclosing entities, and the parties they represent, a free walk. This proposition further suggests that no foreclosure legitimately takes place without evicting the prior owner. This is not logical. It is only logical in the terms of dispossession of title.

To claim that dispossession of property is equal to eviction would run afoul of wrongful foreclosure claims, and substantially change the meaning of title and rights to a property. Regardless, Appellant testified (RR5:221) that she did not live in her residence for a period of 4 months due to the foreclosure.

It is further undisputed that the sales price was grossly inadequate[3] because the amount bid at foreclosure was only $23,000, and the tax appraised value was $69,720, nearly $46,000 less than the value of the property; and the FE instructed HWA & Trustees to only cover the alleged debt and no more. CR866-867.

HWABrf omit that Henry v. Chase Home Finance deals with an "attempted" wrongful foreclosure, which is not recognized by Texas law, and not relevant to this case.

---

[3] Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.The elements of a **wrongful foreclosure claim are**: (1) a defect in the foreclosure sale proceedings; (2) **a grossly inadequate selling price**; and (3) a causal connection between the defect and the grossly inadequate selling price. *Charter Nat'l Bank-Houston v. Stevens,* 781 S.W.2d 368, 371 (Tex.App.-Houston [14th Dist.] 1989, writ denied)

Moreover, in Wieler v. United States Savings Ass'n of Tex., 887 S.W.2d 155, 158 (Tex.App.-Texarkana 1994, writ denied) a case involving DTPA and wrongful foreclosure Wieler contended that there was a shortage in the escrow account[4], the monthly payment amount was not correct, and the attorney fees charged to the escrow (which resulted in an escrow shortage) was not authorized by the bankruptcy order, note or deed of trust.  The trial court granted SJ in favor of the bank.  The court of appeals overruled it holding that "**As to wrongful foreclosure, a person who suffers loss or material injury because of irregularities in a foreclosure sale is entitled to maintain a suit for wrongful foreclosure.**  *See Gainesville Oi & Gas v. Farm Credit Bank, 847 S.W.2d 655, 659 (Tex.App. –Texarkana 1993, no writ)*. A fact dispute as to the source of the **escrow shortage that ultimately led to foreclosure also raises questions concerning the regularity of the foreclosure**.  Thus, SJ was also improper on the claim for wrongful foreclosure." The court further found that D.T.P.A. claims for shortages in the escrow account was an unconsciousable action or course of action

---

[4] Reule contended that first, there was an overpayment in the escrow account that BLS was required to apply to the principal as directed; and later, there was a shortage in the escrow account due to the fact that an escrow payment was sent and never applied.  See CR571

18

under the D.T.P.A. Wieler, at 160. Wieler is factually similar to the present case. There was a dispute in the escrow shortages in Reule's account. (CR672 "loan was originated non escrow) First, there was a dispute that principal only payments were placed in a "suspended escrow" account[5], and later disappeared without any explanation[6]. It was never credited against the principal nor returned to Appellant. Secondly, after taxes were wrongfully paid to Harris County, Appellant sent a check in the amount of the tax paid with instructions to repay the escrow shortage, but BLS refused to credit the account, which lead to an additional the dispute on the account, balance on the loan, and ultimately the accord and satisfaction, and later the foreclosure. RR8,P.20-30,32.

To Appellant's knowledge, HWA never filed any directed verdict and does not refer to any record so indicating. Therefore, this court must disregard its arguments for lack of reference to any record.

## VIOLATION OF THE LIMINE AND EVIDENCE OF PRIOR LAWSUITS

The Appellees fail to cite any case that a claim for mental anguish can open up the doors for prior lawsuits, and only cites

---

[5] CR135-137
[6] CR892 appears to indicate the suspended escrow was applied to escrow shortage. (last entry)

Evidence Rule 403 in support of its position. However, Rule 403 supports appellant's positions, which provides "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Long standing Texas law has already determined that prior lawsuits are irrelevant and highly prejudical. See *Employers Cas. Co. v. Peterson*, 609 S.W.2d 579, 585 (Tex. App.—Dallas 1980, no writ). If the evidence of other transactions between plaintiff and a third party is not relevant to any issue pleaded in the case it is inadmissible. Evidence of another claim to show that plaintiff is a "professional litigant" is improper. *See Employers Cas. Co. v. Peterson*, 609 S.W.2d 579, 585 (Tex. App.—Dallas 1980, no writ). *Irwin v. Par-Oil Well Servicing Co.,* 349 S.W.2d 277, 278 (Tex.Civ.App.—Texarkana 1961, writ ref'd n. r. e.); *see Payne v. Hartford Fire Insurance Co.,* 409 S.W.2d 591, 595 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.). Employers also argues that this evidence was admissible because it bears on Peterson's credibility as a witness. **The fact that Peterson made one prior similar claim does not bear on his truthfulness**.

Furthermore, it was **inadmissible if it was an attempt to show claims-mindness of the plaintiffs**. *See Martinez v. Williams,* 312 S.W.2d 742, 752 (Tex.Civ.App.—Houston 1958, no writ).

Prior lawsuit claiming mental anguish are not admissible for a jury. This is no different that a person having a prior accident. If the injuries are the same, then evidence of the prior injury is put into evidence, but the facts and circumstances i.e., claim and/or lawsuit, are not relevant. Appellees never argued that the prior claims involved mental anguish claims, rather, they argued that she had 14 lawsuit and couldn't remember some of them. RR7:66 David Page, Juror No. 10, testified that the jury was prejudiced by the prior lawsuit and thought that Appellant was only in it for the money. CR1806-7. Furthermore, there was a mischaracterization of the lawsuits. Appellees claimed that there was 14 lawsuit and 14 appeals. That was a falsehood. One of the cases involved Appellees homeowner's association which went through several courts and several appeals and span over 10 years, but it certainly did not amount to 14 cases and 14 appeals. Appellees intentionally mislead the jury in a desperate attempt to prejudice them because the evidence clearly supported Appellant's claims.

21

FE claimed Appellant was misleading the jurors on that issue. RR5:267 FEs' characterization of the lawsuits and false claims was solely designed to prejudice the jury as stated by David Page (CR1807).

Even the Jurors objected to some of the comments and misleading evidence. CR5:106-107, 272. It was clear that the entire line of questions was for nothing more than to prejudice the jury, and FE was successful in doing that. But for this prejudicial evidence, the jury would have rendered a very different verdict. As David Page states, the jury found against Appellant solely based upon these prior lawsuits. There was no evidence that showed that stress from prior lawsuits caused or contributed to any mental anguish claims, and Appellees cite nothing in the record to support its claims. Rather, they cite RR3, P. 50-65, which clearly shows the objections made by Appellant and a great discussion regarding the prejudicial nature of such evidence. It does not show that any testimony opened the door. Appellees claims that the evidence showed may have been mental anguish claims in other lawsuit that attributed to the present claims is not the same as showing it. The testimony was far too prejudicial to have allowed it, and the court

was wrong in allowing its introduction over the motion in limine and overrule Appellant's objections.

FE doesn't get it both ways. First it claims that the business records affidavit of Dr. Sadeghi, which proved up her mental anguish claims, was rightfully excluded. FE then claims that **prior lawsuit claims might show** that other mental anguish claims contributed to her mental anguish claims. The business records affidavit and attached records clearly foreclosed that notion. (CR943,1234; RR8D:57) The record clearly demonstrated that prior to the mortgage lawsuit and the foreclosure proceedings, Appellant had no Vertigo or stress (which required physical therapy), and the record clearly denote that the mortgage lawsuit was the cause of the Vertigo and stress so severe it required physical therapy. (CR572, CR943).

Contrary to HWAbrf claims, Appellant specifically objected to introduction of her prior lawsuits. RR3:50-64. RR3:40 judge overruled objections that lead to the motion in limine being violated.

**WITHDRAWAL OF APPELLANT'S COUNSEL:**

23

HWA, Trustees and FE have no standing to argue any merits of her counsel's motion to withdraw. They have no judicable interest in Appellant's counsel's representation of her or his withdrawal. Therefore, Appellant objects to these arguments and requests that the court disregard them. Furthermore, although HWA/Trustees references the court docket, Reule disputes that what is claims is true. The stated grounds for withdrawal were that Appellant had allegedly retained new counsel (CR371), which simply was not true. There was overwhelming evidence to support the fact that no new counsel had been retained, and none ever appeared in this case. Appellant tried several times but could not find another attorney to help her, she had no money to pay an attorney, and G.P. Matherne had previously represented her pro bono, and promised to handle any appeal—pro bono. There was no conflict between Appellant and her counsel, and an attorney and his client can disagree on certain issues and it's not grounds to allow a withdrawal. The substantial harm done to Appellant as a result of the withdrawal was far greater than any alleged disagreement between her and her attorney. GP Matherne was not an indentured servant, he had agreed to represent Appellant Pro Bono. Any

24

defects in the case, evidence, trial and appeal are a direct result of a pro se litigants lack of knowledge, and a trial court allowing her pro bono attorney to withdraw without good cause. The withdrawal devastated Appellant's case. The case should be reversed and retried due to this abuse of discretion and otherwise incurable error.

## THE FINANCIAL ENTITES RESPONSE:

First, FE did not file a cross-appeal, and their issues presented for the appeal should not be considered i.e., jury finds, arguments not present in trial court. The only issues that can be addressed are those raised by Appellant. Appellant objects to the cross-appeal. The focus of FEs' brief appears to be the trial, and it skips over the fact that the SJs should have and would have precluded the the trial, and the only thing the jury should have considered was Appellant's damages. FE also fails to reference any documents in support of its arguments. Had the court properly granted MSJ, it may have put the parties in a position to settle and no trial would have been necessary.

Appellant also objects to Appellees statement of facts at page 19 wherein they claim that she agreed that when she signed the

note, she agreed to repay the Note. This is a misstatement of facts, as the court well see below. There was no evidence that BLS was in possession of any Note signed by Appellant.

Appellant also objects to the Dx reference. Although there's an explanation to the Dx, not one single Dx references the Volume No., or page number where it can be found. Facts pertinent to the issue must be supported by the record. TRAP 38.1(g). The Dx reference does not support the record, and this court is not required sift through the record without guidance from the party to find support for a party's bare assertion of error."[7] *Crider v. Crider,* No. 01-10-00268-CV, 2011 WL 2651794, at *5 (Tex. App.-Houston [1st Dist.] July 7, 2011, pet. denied) (mem. op.); *see Nguyen v. Kosnoski,* 93 S.W.3d 186, 188 (Tex. App.-Houston [14th Dist.] 2002, no pet.) ("This Court has no duty to search a voluminous record without guidance from Nguyen to determine whether an assertion of reversible error is valid."). "[E]rror may be waived by inadequate

---

[7] This is especially true when the party is represented by counsel. Its fundamentally unfair to require pro se litigants to know how to reference their evidence in a concise manner, and appellate briefs are to be construed liberally, so the rights to appellate review is not lost by waiver. *Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (citing *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex.1997)). TEX.R.APP. P. 38.1(f).

briefing." *Fredonia State  Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994).  For these reasons, Appellant objects to the Dx reference and requests that his court not consider the reference, and acknowledge that those arguments were waived.

Also, many of the references to the record does not state what the Financial Entities claims it states, nor does FE reference any evidence  in support of its arguments.

The FEs does not properly address in their brief the sj motion, rather it focus on the trial.  SJ was originally granted in Appellant's favor on expiration of statute of limitations and break in chain of title.  It was later overruled by the trial court based upon new undisclosed theories (new default), alleged expert witnesses (JoAnn Snyder) and witness (Gerald Truebe).  Appellant timely objected and moved to exclude those new theories and witnesses. CR1096-1221, and CR1080.   FE NEVER FILED MOTION FOR LEAVE[8] OR OTHERWISE DEMONSTRATED THAT GOOD CAUSE EXISTED TO ALLOW THE NEW EVIDENCE AND WITNESSES AFTER THE SJ HAD ALREADY BEEN GRANTED IN APPELLANT'S FAVOR, and

---

[8] 193.6(b) places burden on party seeking to introduce evidence to demonstrate good cause and lack of surprise and prejudice.  Section (c) a court can continue the proceeding to allow the late evidence.  However, in this case, the SJ had already been granted in Appellant's favor, and the motion for reconsideration was too late to provide new evidence without demonstrating good cause.  FE never attempts to argue good cause, nor directs this court to any evidence showing that any such arguments were made.

does not refer the court to any evidence demonstrating that it complied with the Rules of Civil Procedure, Rule 193.6, or that it made any argument in the trial court on good cause existing and lack of prejudice. Rather, FE takes the position that Rule 193.6 only applies to trials, and not SJs, ignoring Supreme Court precesendence to the contrary. Fort Brown Villas v. Gillenwater, 285 SW3d 879 (Tex.2009)(holding "In this premises liability case, we decide **whether Texas Rule of Civil Procedure 193.6**, which provides for the exclusion of evidence due to an untimely response to a discovery request, **applies in a SJ proceeding**. **We hold that it does** and, therefore, reverse the court of appeals' judgment."). (Emphasis added)

The trial court overruled her objections and as such error or otherwise abused its discretion. Exclusion under Rule 193.6 is mandatory.

**BAYVIEW DOES NOT OWN THE DEED OF TRUST AND THE JURY FINDING CAN BE REVERSED BECAUSE THE GREAT WEIGHT OF THE EVIDENCE SHOWING THAT BAYVIEW LOAN SERVICING DOES NOT OWN THE NOTE AND DEED OF TRUST:**

BLS contends that it owns the deed of trust and note because the jury said so. The evidence clearly showed the mortgage (note

28

and deed of trust) was purchased by Bayview Financial Trading Group (hereinafter "BFTG") RR8E:47[9], a completely different entity from BLS.  BLS' own records, CR898-899 clearly denote that there was no assignment to BLS.  Nowhere in the chain of title or the chain of endorsements does BFTG appear.  (CR571.  *Leavings v. Mills,* 175 SW3d 301 (Tex.App. – Houston [1st Dist] 2004) is on point.  In Leavings, there was no evidence show the chain of title of the Leavings' note from "builder" to himself.   Like in Leavings, supra, there is no evidence to show the chain of title from FirstCapital Bank to BLS.  The Mortgage Loan Purchase Agreement, (CR571, RR8E:47) shows the mortgage was sold to BFTG  which is conspicuously missing in both the chain of title and chain of endorsement.  This is a fatal defect in the chain of title[10].  As a matter of law, BLS did not and could not have owned the  Note and Deed of Trust at anytime whatsoever.

This was all resolved by the court's original ruling on the SJ which should never have been overturned by the trial court.  FE

---

[9] September 14, 2011, the Business Records Affidavit of Prosperty Bank f/k/a FirstCapital Bank, SSB was filed with the trial court, which contained the exact same Mortgage Loan Purchase Agreement.

[10] *Murphy v. Aurora Loan Servs., LLC,* 699 F.3d 1027, 1033 (8th Cir.2012 (recognizing that mortgagors can defend against foreclosure by establishing a fatal defect in the purported mortgagee's chain of title).

skips over these facts. The PSA set forth all parties that were supposed to appear in the chain of title. Brf.29.

## APPELLANT HAD STANDING UNDER PSA TO CHALLENGE IF ASSIGNMENTS WERE VOID AB INITIO

Appellant never sued for breaches of the PSA, rather, she challenged BLS' standing to foreclosure because the assignments were void ab initio. To claim that Appellant cited no Texas case law on her PSA arguments is incorrect. Brf.33&53, cites *Miller v. Homecomings Fin., LLC,* 881 F.Supp. 2d 825, 831 (S.D. Tex. 2012) and *In re Saldivar*, No. 11-10689, 2013 WL 2452699, *4 (Bankr. S.D. Tex. June 5, 2013); (holding New York trusts (substantively the same as the ones at issue here) were not the owners of notes when the notes were purportedly transferred to the trusts after their startup dates. FE does not dispute this fact. Appellant has a right to challenge any defect in chain of title, or defect in who actually owns and holds the Note, or any other issue which would rendered the assignment void ab initio, including evidence of which entity was required to be in the chain of title.

In Miller, supra @832, the court specifically found:

30

"**Texas courts routinely allow a homeowner to challenge the chain of assignments by which a party claims the right to foreclose**. *See Martin v. New Century Mortgage Co.,* 377 S.W.3d 79 (Tex.App.-Houston [1st Dist.] 2012); *Austin v. Countrywide Homes Loans,* 261 S.W.3d 68 (Tex.App.Houston [1st Dist.] 2008); *Leavings v. Mills,* 175 S.W.3d 301 (Tex.App.Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone,* 99 S.W.3d 263 (Tex.App.-Eastland 2003); *Priesmeyer v. Pacific Southwest Bank, F.S.B.,* 917 S.W.2d 937 (Tex.App.-Austin 1996). Federal district courts in this state have also entertained chain of title claims by mortgage debtors challenging foreclosure proceedings. *See Millet v. JP Morgan Chase, N.A.,* 2012 WL 1029497, \*4 (W.D.Tex. Mar. 26, 2012);*Norwood v. Chase Home Finance LLC,* 2011 WL 197874 (W.D.Tex. Jan. 19, 2011). Nor is Texas alone among non-judicial foreclosure states in permitting such suits. *U.S. Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40, 53 (2011).

After all, **the argument apparently goes, the Millers owe the money to *somebody*. In truth, the potential prejudice is both plain and severe — foreclosure by the wrong entity does not discharge the homeowner's debt**, and leaves them vulnerable to another action on the same note by the true creditor. **Banks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust. MasterCard has no right to sue for debts rung up on a Visa card, and that remains true even if MasterCard has been assigned the rights of another third party like American Express. Unless and until a complete chain of transactions back to the original lender is shown, MasterCard remains a stranger to the original transaction with no claim against the debtor.**

## BLS DID NOT HAVE AUTHORITY TO FORECLOSE

(CR571, specifically CR960), Ms. Joyce Cauthen, Appellant's mortgage expert, also testifies to the chain of title and chain of indorsement that likewise support Appellant's claim that BLS has no right to foreclose.

BLS continues to claim that Appellant has no standing with reference to the PSA. This argument is misplaced. Appellant is not attempting to enforce the terms of the instruments of assignment; to the contrary, she urges that the assignments are void ab initio, and New York law controls. (CR571) Texas courts follow the majority rule that the obligor *may* defend "on any ground which renders the assignment void." [11]

Appellant has repeatedly demonstrated that there is a clear break in the chain of title, and Appellant's SJ should never have been reversed by the trial court. See arguments on Tex.R.Civ.P.193.6 motion to exclude below.

---

[11] *Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.,* 523 S.W.2d 426, 430 (Tex.Civ.App.1975) (citing *Glass v. Carpenter,* 330 S.W.2d 530, 537 (Tex.Civ.App.1959)); *see also, e.g.,* 6A C.J.S. ASSIGNMENTS § 132 (2013) ("A debtor may, generally, assert against an assignee ..., any matters rendering the assignment absolutely invalid ..., such as[] the nonassignability of the right attempted to be assigned, or a prior revocation of the assignment.");*Murphy v. Aurora Loan Servs., LLC,* 699 F.3d 1027, 1033 (8th Cir.2012 (recognizing that mortgagors can defend against foreclosure by establishing a fatal defect in the purported mortgagee's chain of title).

Appellant has repeatedly stated that the note she signed was in purple ink. The jury specifically found that the parties did not agree to the purple ink note. (CR1580)(CR1563 requested if BLS was the owner and holder of Appellant's note, but the trial court rejected Appellant's question) There was never any other question submitted to the jury regarding whether or not BLS was the owner and holder of the note. The court rejected every single one of Appellant's jury instructions (CR1152-1568) If there was no agreement to a purple ink note, no proof that BLS had any Note signed by Appellant, and no right to enforce a Note they do not own or are in possession. There was no question regarding any other note and any arguments regarding any other note was waived by FE. A party not in possession of the original Note cannot foreclose on a property. This is well established law.

## APPLICATION OF RULE 196.3 IS CORRECT AS ALLEGED BY APPELLANT.

The Texas Supreme Court squashed that idea in *Fort Brown Villas III Condo. Ass'n v. Gillenwater,* 285 S.W.3d 879, 881 (Tex. 2009) (rule 193.6's exclusionary sanction pertains to SJ, and is automatic unless one of the rule's exceptions applies). See also

Bosque Trading Enterprises, Inc. v. Business Loan Cetner, LLC, (Tex.App.—Waco 2012) (TEX. R. CIV. P. 193.6. Rule 193.6 of the Texas Rules of Civil Procedure applies to SJ proceedings.); Castillo v. Mizpah Residential Care, (Tex.App.—Corpus Christi 2014) (SJ – 193.6 exclusionary rule mandatory); Brescia v. Slack & Davis, LLP (TexApp.-Austin 2010)(SJ – excluded two expert per Rule 196.3 due to untimely designation).

FE never dispute that authority; never cite any authority in support of its position.

FE contends that she references no evidence that FE failed to disclose within 30 days before trial, is irrelevant as the motions to exclude relate specifically to the motions for SJ and exclusion of the untimely, undisclosed new legal theory and witnesses. The Texas Supreme Court has already stated that the rule 193.6 applies to SJs. Fort Brown Villas, supra.

FE failed to properly brief this issue and therefore has waived any argument. The court should reverse and render on the issue of expiration of statute of limitations and break in chain of title to restore the court's original ruling on those two specific issues. (CR1042). Appellant's objections to undisclosed legal theories and

34

witnesses should be sustained, and she requests that this court reverse and rendered in her favor.

## PSA ARGUMENTS AND THE APPLICATION OF NEW YORK LAW WERE NOT WAIVED.

First, the PSA argument are part of the motions for SJ in the trial court below. (CR571) The trial court unilaterally rejected each and every proposed Jury instruction Appellant made to the court without proper consideration, and was a clear abuse of discretion. The court never stated why they rejected it to allow Appellant an opportunity to correct and resubmit it, the Court just decided that all jury instruction submitted by Appellant were incorrect. (RR6:186-235; RR7) FE completely skip over the SJ arguments on the PSA. Appellant tried to submit questions, but the court refused to allow her to do so. This was a clear abuse of discretion.

The jury never should have considered the PSA arguments because the SJ on this issue should have been granted in Appellate's favor. FE doesn't dispute this fact nor brief it, and therefore has waived argument. The SJ (CR571) evidence established the fact that Appellant had standing under the PSA, and the court has overruled FE standing argument at least three

35

times.  RR4:31-33.  FE do not argue the SJ or evidence on her FDCPA and TDFCA claims, and therefore have waived any arguments.  Accordingly, this court should reverse and render in Appellant's favor and allow a jury to consider her damages

## THE LOAN WAS NEVER REINSTATED AFTER ACCELERATION AND THE FOUR YEAR STATUTE OF LIMITATIONS HAD RUN:

FEs' arguments are wholly without merit and unsupported by law and the record.  Appellant should not be required to argue this because the SJ was originally granted in her favor, and later overturned by the trial judge based upon undisclosed legal theories and undisclosed witnesses (see above re: 193.6 exclusion), and such evidence was improperly included and relied upon in overturning the original SJ.  However, FE clearly overlooks, and make no reference to the Supreme Court's decision in Wind Mountain Ranch v. City of Temple, 333  S.W.3d 580, 581, 54 Tex. Sup. Ct. J 286. (Tex. 2010) dealing directly with notice requirements and compliance with Civil Practice and Remedies Code 16.036.  FE's reliance on Holy Cross v. Wolf, 44 W.W.3d 562 (Tex.2001), is misplace.  See  CR696-699 for further argument.

The Texas Supreme Court said that Section 16.035/16.036 of the Civil Practice and Remedies Code specifically applies to this situation. No new default was ever disclosed, and JoAnne Snyder and Gerald Truebe were never identified in response to discovery, and thus, were required to be excluded as evidence/witness/theories in response to Appellant's SJ.

## FAIR DEBT COLLECTION AGAINST FE

FEbrf.47 states that she waived her claims regarding the phone calls. Appellant filed a MSJ (CR571) establishing those claims and specifically references those claims at Brf.81. Their arguments have no merit. In her affidavit in support of her MSJ at CR651, she specifically includes those phones and the dates and times. This is irrefutable evidence of violations of 15 U.S.C. Section 1692c, and FE doesn't dispute these facts. FE claims they are not debt collectors. *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 – (4th Circuit 2006) clearly states that they are. It is undisputed that BLS allegedly obtained the mortgage after the accord, and alleged default. *See Glaze v. Chase Home Finance, LLC,* 704 F.3d 453, 457 (COA-6th Cir. 2013) (The Act's definition of "debt collector" consists

of a general definition followed by a number of exceptions. *See* 15 U.S.C. § 1692a(6). **One exception** is relevant here: the term **"debt collector" does not include any person attempting to collect "any debt owed** or due or asserted to be owed or due another to the extent such activity ... **concerns a debt which was not in default at the time it was obtained by such person**." *Id.* § 1692a(6)(F)(iii). It is undisputed there was an alleged default at the time BLS acquired the debt. (CR716-5/2/2007 notation – BLS was **SERVICER)** (CR571) (CR898 (2/27/2009) last notation, CR899-2/23/2009 – no assignment). This evidence clear shows that BLS was the servicer, and later allegedly became the hold of the Note. This is undisputed evidence that as loan servicer, it was subject to the act, and because the alleged debt was allegedly in default at the time BLS became the alleged holder of the alleged Note, it continued to be subject to the FDCPA. TFDCA stating anyone person collecting a debt, meaning, an individual collecting a debt on behalf of itself.

**BREACH OF CONTRACT CLAIM AND ACCORD AND SATISFACTION**

FEs' arguments have no merit. Although Appellant did admit to a breach, the breach was mischaracterized because Appellant was not allowed to discuss the accord and the reasons for it. Yes, Appellant stopped paying because she made a full and final payment on the account, which was accepted and never repudiated during the repudiation period, and FE being told repeatedly about the accord. All FE had to do was return the check. To characterize it as an admission is simply wrong. This is a manipulation of the judicial process, the facts, and unconstitutional restraints by refusing to allow a party to fully testify as to the accord and provide an explanation as to why payments stopped. RR1-7, and the Limine Order signed by the Court. Appellant has requested this already, but does not have the 2SCR to reference.

FE makes no reference to any document to support its claim that in the trial court in response to Appellant's MSJ or anywhere that the parties had no "**legitimate dispute**" and/or "bona fide dispute", to satisfy the elements of the accord. This is simply false. See CR72 (specifically CR135-159, 164-175). The failure to apply principal only payments to the principal amount and diverting

39

those payment by placing them in a "suspended escrow account" (which was not required by the loan) is clear evidence of the dispute. Paying taxes that were not owed was also a dispute. Failing to credit the escrow upon return of escrow funds, is a further dispute. Continuing to make charges against the account in excess of the principal and taxes, also created a dispute. Appellant also testified by affidavit that she made numerous calls prior to letters trying to resolve this matter, to no avail. Charging insurance and refusing to credit it when proof was sent showing it was covered by the Homeowner's association, created a dispute. The account was never credited until years into the litigation (CR722), and just before trial. This is overwhelming evidence that there was a dispute.

FE cite Lopez v. Munoz, Hockema & Reed, in support of its position it was unaware of any dispute. The case does not support that position. The case involved a contingency fee, in which a case settle and the contract provided for 40% if prior to appeal, after appeal, it's 45% contingency fee. The case was tried and later settled before an appeal was perfected. At the settlement

negotiations, it mistakenly called for a 45% contingency fee. The Lopez's later sued to recover the 5% fee. The Supreme Court found that because there was no dispute, no valid accord took place. (T]he very existence of the dispute is the consideration for the accord and satisfaction. *Hycarbex, Inc. v. Anglo-Suisse, Inc.,* 927 S.W.2d 103, 110 (Tex.App.-Houston [14th Dist.] 1996, no writ).

FE claims the check constituting the accord is illegible. A bad copy of a check provided by Appellant's bank does not make it illegible and appellant has no control over the quality of the copy. The check clearly states it's being tendered on the disputed account. Appellant's has neuromuscular disease which has caused her handwriting to diminish over the years, but the check is legible.

Good faith tender does not require a certain percentage of the debt to be tendered, and FE cites no authority to support its claims. No Texas case has ever said that a certain percentage of the debt must be paid in order to constitute good faith. See Case Funding Network, LP v. Anglo-Dutch Petro, 264 S.W.3d 38, 53 (Tex.App. – Houston [1st Dist.] 2007) (defining good faith pursuant to Section 3.311). Appellant never routinely places accord and satisfaction language on her checks, and therefore she acted in good faith.

## DTPA AGAINST APPELLEES

FE and HWA/Trustees have cited no case that contradict the Texas Supreme Court holding in *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex.1982) and *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983), which are directly on point. Also, Weiler, supra is on point as it deals specifically with a mortgage foreclosure. The Supreme Court makes it clear that Reule is a consumer for the purpose of D.T.P.A., see Knight and Flenniken, supra. See also Weiler, supra @160 (wrongful charges against escrow account, unauthorized payments to lawyer fees against mortgage loan)

## APPELLANT HAS NOT WAIVED ANY CLAIMS

The court rejected each and every single one of Appellant's jury instruction without explanation or opportunity to cure. Had appellant's counsel not been allowed to withdraw, Appellant would have had any issue properly preserved (although she believes the MSJ took care of all the issues, and her submission of the jury instruction preserved errer). She did present arguments on the Quiet title case, in both her SJ (CR571) and at trial, and the court

would not allow her to present not one single jury instruction. She has preserved all of her SJ arguments, on each of her claims.

PRAYER

Appellant requests that her case be reversed, rendered and/or remanded to the trial court, and for such other and further relief as the court deems just and proper.


Dated: January 5, 2015.        Respectfully submitted,


                                        /s/Christine E. Reule
                                        Christine E. Reule
                                        1831 Sherwood Forest #24
                                        Houston, Texas 77043


By my signature above, I hereby certified that a true and correct copy of this brief has been forwarded to all interested parties.

Word Court: 7,289